547 So.2d 38 (1989)
Johnny Lee EVANS a/k/a Charles Kimberly
v.
STATE of Mississippi.
No. 58444.
Supreme Court of Mississippi.
June 28, 1989.
J.W. Miller, Brenda Freeman Sadler, Biloxi, for appellant.
Mike Moore, Atty. Gen. by Leyser Q. Morris, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, ROBERTSON and SULLIVAN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Johnny Lee Evans was indicted in the Circuit Court of Harrison County, Mississippi, on charges of kidnapping and rape. The indictments were consolidated for trial by agreement of Evans and the State. Evans waived a jury trial on both the guilt and sentencing phases and insisted that the charges be heard by the circuit judge without a jury. Although the State objected to the bench trial, the court granted Evans' motion for trial without jury, and proceeded with the bench trial. The trial judge found Evans guilty on both charges and sentenced him to serve thirty (30) years on the kidnapping charge and sentenced him to life on the rape charge, in the custody of the Mississippi Department of Corrections. *39 Evans has appealed to this Court and assigns five (5) errors in the trial below.

Facts
The victim in this case is Sister M., a Catholic nun, who resides on the Mississippi Gulf Coast. She was an instructor of English as a second language for the Catholic Social Services in Biloxi. On October 7, 1985, Sister M. first encountered appellant. He approached her and requested that she drive him to the VA Hospital, and she complied with his request. Upon letting appellant out at the VA Hospital, Sister M. was preparing to drive away when he came back to her car and told her that the VA refused to take him because he did not have the proper papers. He asked for a ride back and Sister M. let him out of her automobile on Lameuse Street.
On October 8, 1985, appellant approached Sister M. outside the school where she taught and again asked her to take him to the VA Hospital, which she agreed to do. Sister M. and appellant left the Catholic Social Services building and she drove to the VA Hospital. En route, the appellant asked her to drive to his cousin's house so he could get some needed papers and gave her instructions how to get there. They arrived in the area, appellant failed to recognize anything, and Sister M. turned around and started towards the VA hospital again. On the way, the appellant indicated that he recognized his cousin's street and had Sister M. to turn down the street which eventually ended up on Post Lane Road. He was still unable to identify his cousin's house. Sister M turned her vehicle around and started back towards the VA hospital, when appellant grabbed the keys out of the ignition and turned the engine off. He forced Sister M. outside the car and into some bushes where he told her to remove her hose and panties. She began to yell and the appellant choked her; she struggled with the appellant, but he overpowered her and attempted to engage in sexual intercourse.
Appellant forced Sister M. into the car, which appellant drove to County Barn Road where he stopped the car, forced her to lie down, and raped her.
After the assault, appellant moved to the passenger side of the car and Sister M. started driving. He rolled the car window down and threw her underwear outside. When they arrived at Popps Ferry Road, the appellant told her to stop the car, and indicated that he wanted to walk. He began to walk toward the woods and Sister M. locked her car doors, and drove home in search of her housemate, Lourdes Esculano. Upon finding her, they drove to the police station, where she reported the assault.
Sister M. was taken to the emergency room at Biloxi Regional Medical Center where Dr. Russell McDowell, the emergency room physician, examined her and assembled a rape evidence kit. His examination revealed that Sister M. was a physical virgin and there was blood in her vaginal vault. He made slides and took smears of the vaginal fluid and determined that numerous spermatozoa were present. The acid phosphate level indicated recent sexual intercourse. He found abrasions and scratches on Sister M.'s body and obtained physical evidence from her.
Dr. McDowell also performed a rape evidence exam on the appellant after his arrest and obtained physical samples from him.
Officer Rodney Vincent Fountain, of the Biloxi Police Department, conducted an investigation of the assault. He photographed Sister M.'s vehicle and found a red substance in it which appeared to be blood. He went to the area where the rape occurred, and found a pair of white undergarments and a straw hat, worn by appellant. He also found one of Sister M.'s shoes and a notebook containing papers with appellant's name on them.
Tests performed at the Mississippi Crime Lab indicated that fragments of hair on Sister M.'s clothing were microscopically the same as the known head hairs of the appellant. The analysis of blood samples and seminal fluid compared positively with those of appellant.

*40 Law

I.

THE LOWER COURT IMPROPERLY SENTENCED THE DEFENDANT TO LIFE IMPRISONMENT.
Prior to trial, the charges of kidnapping and rape were consolidated upon motion of the State and agreement of the appellant. Afterwards, the appellant waived trial by jury and requested a bench trial with the trial judge sitting as jury and judge. Appellant now contends that the trial judge lacked the authority to sentence him to life imprisonment, after sitting as a jury. Mississippi Code Annotated § 97-3-65 (Supp. 1988), under which the appellant was indicted, tried and convicted, provides in pertinent part:
(2) Every person who shall forcibly ravish any person of the age of fourteen (14) years or upward, or who shall have been convicted of having carnal knowledge of any person above the age of fourteen (14) years without such person's consent, by administering to such person any substance or liquid which shall produce such stupor or such imbecility of mind or weakness of body as to prevent effectual resistance, upon conviction, shall be imprisoned for life in the State Penitentiary if the jury by its verdict so prescribes; and in cases where the jury fails to fix the penalty at life imprisonment the court shall fix the penalty at imprisonment in the State Penitentiary for any term as the court, in its discretion, may determine.
We repeat again that the appellant waived trial by jury and insisted that he be tried before the judge as both the fact finder and judge on the law. The trial judge explained to appellant in great detail and length what his situation would be without a jury and that, in waiving a jury during the sentencing phase, the appellant did not prevent the State from seeking life imprisonment. Without question, the appellant understood what he was doing in waiving the jury and knew that, if found guilty by the trial judge, he could be sentenced by the trial judge to life imprisonment. Obviously, he thought his chances were better with the trial judge than with a jury on a charge of raping a Catholic nun.
The contention and argument of appellant on this assigned error indicate that his actions in the lower court amounted to trifling with the court, deception and attempting to mislead the court. Appellant has no standing to seek redress from alleged error of his own creation. Sanders v. State, 219 So.2d 913, 915 (Miss. 1969); Davis v. State, 472 So.2d 428, 432 (Miss. 1985) and Johnson v. State, 416 So.2d 679 (Miss. 1982).
It is well settled that trial by jury in criminal cases may be waived by agreement of the prosecution except where the death penalty is involved. Robinson v. State, 345 So.2d 1044, 1045 (Miss. 1977), and Prueitt v. State, 261 So.2d 119, 121-22 (Miss. 1972); Rule 5.13 of the Uniform Criminal Rules of Circuit Court Practice.
In § 97-3-65(2), reference to "the jury" is synonymous to "the trier of facts." Here, the judge, at the insistence of the appellant, was the "trier of facts" and substituted for the jury, which ordinarily is the "trier of facts" in a criminal case.
We are of the opinion that there is no merit to assigned Error I and it is rejected.

II.

THE LOWER COURT ERRED IN ALLOWING THE ENTIRE TESTIMONY OF MS. ESCULANO AS A MISSISSIPPI RULES OF EVIDENCE RULE 803 HEARSAY EXCEPTION.
Ms. Lourdes Esculano testified on behalf of the State that she was the housemate of the victim at the time the crime was committed; that she was concerned about her housemate because she was not at home by 9 p.m.; that she drove her car around looking for the victim; and that upon returning to her residence after her second search, she met Sister M. who was looking for her. Sister M, related to Ms. Esculano that she had been raped by appellant, and she testified to the same facts indicated to her.
*41 The appellant objected to the testimony of Ms. Esculano and the trial judge overruled the objection and admitted the testimony as an exception to the hearsay rule under 803(1) and (2) of the Miss. Rules of Evidence.
Rule 803 provides in pertinent part:
(1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter.
(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
Sister M. complained at the very first opportunity and to the first person she saw after the assault. Ms. Esculano said:
When I opened the door the light went on and she looked soaking wet to me. Her hair was hanging on the inside of her face with little curls. It looked like she had just stepped out of the shower. Her shirt was soaking wet, her lip was swollen.
In Harris v. State, 394 So.2d 96, 98 (Miss. 1981), this Court said:
To be admissible under this exception, the statement must be spontaneous. The question of spontaneity is to be decided upon the facts and circumstances of each individual case and such a determination is a question for the trial judge whose action in admitting the statement should not be held to be error unless this Court would be justified in concluding that under all and any reasonable interpretation of the facts the explanation could not have been spontaneous.
The assigned Error II is rejected.

III.

THE LOWER COURT ERRED IN ALLOWING ADDITIONAL SWORN TESTIMONY PURPORTEDLY COVERING AGGRAVATING CIRCUMSTANCES DURING A SENTENCING HEARING.
The appellant has failed to cite any authority in support of this assigned Error III, and there is no requirement on this Court to address the same. Burk v. State, 506 So.2d 993 (Miss. 1986); Carter v. State, 493 So.2d 327, 329 (Miss. 1986); and Ramseur v. State, 368 So.2d 842, 844 (Miss. 1979); Shive v. State, 507 So.2d 898, 900 (Miss. 1987). However, we note that Rule 5.13(2)(b) and (c) of the Uniform Criminal Rules of Circuit Court Practice state:
(b) The State may introduce evidence of aggravation of the offense to which the defendant has been convicted or pleaded guilty.
(c) The defendant may introduce in evidence any evidence he deems necessary to contradict or supplement any information contained in the presentence investigation report.
The trial judge here, sitting without a jury, had broad discretion in the things he was able to consider. He may appropriately conduct an inquiry broad in scope, largely unlimited as to the kind of information he may consider, or the source from which it may come. See United States v. Barnett, 587 F.2d 252 (5th Cir.1979). We are of the opinion there is no merit in assigned Error III and it is rejected.

IV.

THE LOWER COURT ERRED IN ALLOWING THE DEFENDANT TO STAND TRIAL WHILE UNDER THE INFLUENCE OF DRUGS.

V.

THE LOWER COURT ERRED IN ALLOWING INTO EVIDENCE BLOOD SAMPLES TAKEN WITHOUT THE DEFENDANT'S CONSENT OR WITHOUT A COURT ORDER.
We have carefully considered assigned Errors IV and V and conclude that there is no merit in them. Therefore, those assigned errors are rejected.
There being no reversible error in the trial below, the judgment of the lower court is affirmed.
AFFIRMED.
*42 HAWKINS and DAN M. LEE, P.JJ., PRATHER, ROBERTSON, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.