# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-KA-01175-SCT

*EDWIN SEWARD a/k/a EDWIN PAUL SEWARD a/k/a*
*EDWIN PAUL SEWARD, JR.*

*v.*

*STATE OF MISSISSIPPI*

**THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-A**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/01/95 |
| TRIAL JUDGE: | HON. KOSTA N. VLAHOS |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PATRICIA B. EMERSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT FLYNN |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 7/30/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/23/97 |

**BEFORE DAN LEE, C.J., McRAE AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

Edwin Seward was convicted of Felony Driving Under the Influence in the Circuit Court of Harrison County, Mississippi. Alleging that the indictment under which he was tried was defective; that the State failed to prove all the elements of the offense; that the court erred in failing to grant his motion for a J.N.O.V.; that he was not apprised of the legal consequences of failing to take an intoxilyzer test; that he was not apprised of the opportunity to take an independent blood test; that the court erred in denying a proposed jury instruction; and that the lower court erred in denying him bond on appeal. This Court affirms Seward's conviction.

## FACTS

On February 15, 1994, at approximately 1:30 A.M., Edwin Seward was informed by a friend that someone had possibly thrown a cigarette into his MG midget convertible, which was parked with its top down a short distance from his home. Upon receiving this news, Seward went to make sure that the car was not in danger.

Officer Bruce Johnson was patrolling at that time and observed Seward getting into the convertible. Knowing that Seward's license had been suspended at one time, Johnson called in to check and see if Seward's license was still suspended. Johnson observed Seward driving in the center lane of traffic with no headlights. Upon receiving confirmation that Seward's license was still suspended, Johnson pulled Seward over. When Seward pulled his car into the parking lot of a nearby convenience store, he ran into the concrete curb stop with enough force that it was noticed by both Officer Johnson and Wendall Hayes, the store clerk. When Seward got out of the car, Officer Johnson could smell an "extremely strong" odor of alcohol on Seward's breath and Seward's speech was slurred. Seward attributes these facts to medication and a strong mouthwash which he took as a result of a recent surgery on his jaw. Seward was arrested for driving without lights, for driving under the influence, and for driving without a license. Officer James Rungo, who arrived on the scene shortly thereafter, pursuant to a cautionary call for assistance from Johnson, also testified that Seward's behavior was erratic and that Seward had a strong smell of alcohol on his breath. Officer Johnson testified and Seward admitted that Seward was belligerent, and that after he was put in the patrol car, he was crying, yelling and screaming.

There was a conflict between Seward's testimony and that of Johnson as to whether Seward was given field sobriety tests. Seward claims that Johnson gave none. Johnson claims that Seward refused to submit to any field tests.

A similar conflict exists as to the events which occurred at the police station. Officer Johnson claims that Seward refused the intoxilyzer, as well as to answer questions concerning whether or not Seward was on medication. Seward denies being offered the intoxilyzer, but describes in his testimony that Johnson appeared to be preparing the machine for use. Seward also claims that Officer Johnson struck him and threw him to the floor after he called Johnson a "punk." Johnson denies hitting Seward. But whether Johnson did so or not, the end result was that Seward ended up bleeding to the point that medical assistance was called for him. An ambulance was called to transport Seward to the hospital, but Seward was transported in police custody instead because as T. J. Hill, the ambulance attendant, testified, Seward was uncooperative. Hill also testified that Seward told him that he received his injuries from falling down. Hill thereafter suggested that Seward go for X-rays. Seward's father, Edwin Seward, Sr. testified that he saw his son at the hospital, and that Seward, Jr. did not appear to be intoxicated. On cross examination, however, he admitted that Seward, Jr. was being loud and verbally abusive to Johnson to the point where Seward, Sr. told Seward, Jr. to shut up.

Seward was subsequently indicted, tried and convicted of Felony Driving Under the Influence and sentenced to three years in the custody of the Mississippi Department of Corrections, eighteen months suspended, and a $2,000 fine. Seward's subsequent motions for J.N.O.V. and for a new trial were denied, as was his motion for bond pending appeal.

## STANDARD OF REVIEW

Interpretation of statutes is a matter of law. *Hernandez v. Vickery Chevrolet-Olds Co., Inc.,* 652

So. 2d 179, 182 (Miss. 1995). In its review of questions of law, this Court conducts its review *de novo*. *Gibson v. Board of Supervisors of Calhoun County*, 656 So. 2d 312, 314 (Miss. 1995).

This Court's standard of review for denial of a judgment notwithstanding the verdict is such that when considering such a motion, the Court will consider all the evidence in the light most favorable to the State, accepting all evidence introduced by the state as true, together with all reasonable inferences therefrom. If there is substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial judgment might have reached different conclusions, we may not disturb the verdict of guilty. *Jones v. State*, 606 So. 2d 1051, 1060 (Miss. 1992). The Court will not reverse a jury verdict unless it is against the overwhelming weight of evidence and credible testimony. Conflicts in the evidence are to be resolved by a jury, and before the reviewing Court can interfere with a verdict, testimony must so strongly preponderate that the Court can safely say that it was overwhelmingly in favor of the appellant. *Jackson v. Griffin*, 390 So. 2d 287, 289 (Miss. 1980).

A motion for a new trial is discretionary with the trial judge, and this court will not order a new trial unless it is convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. *Jones v State*, 606 So. 2d at 1061.

In reviewing a refusal to give jury instructions, this Court looks at evidence from the view of the party requesting the instruction. We accept that a party has the right to have his theory of the case presented to the jury by instructions, provided that there is credible evidence to support that theory. *Splain v. Hines*, 609 So. 2d 1234, 1239 (Miss. 1992).

## DISCUSSION OF LAW

### I. WHETHER THE INDICTMENT WAS SUFFICIENT TO CHARGE SEWARD WITH A FELONY.

#### A.

#### Was the indictment sufficient to charge Seward *as* a third offender.

Seward's primary argument is that the indictment is fatally flawed because it failed to give him notice that he was being charged as a third offender, a felony, as opposed to the misdemeanor first or second offender. The indictment stated that "Edwin Paul Seward . . . did . . . feloniously drive or operate a motor vehicle . . . while under the influence of intoxicating liquor, having been previously convicted of the prior Implied Consent Law violation . . ." The indictment went further to list Seward's March 4, 1993 conviction and his February 27, 1992 conviction. Further, the indictment enumerated these offenses as being Second Offense, and First Offense, respectively, and noted the courts, docket book numbers, and page numbers, as well as the dates. Thus, Seward's indictment appears to have facially met the requirements set forth in *Page v. State*, 607 So. 2d 1163 (Miss. 1992). As a result, we find this issue is without merit.

#### B.

#### Whether the indictment should have been apprised of the dates of his offenses, rather than his convictions.

Seward further argues that the indictment should have listed the dates of his previous offenses, rather than the dates of his previous convictions. **Miss. Code Ann.** § 63-11-30(2)(c) literally requires a showing that the offenses which qualify a defendant for enhanced penalties as a third or subsequent offender of the Implied Consent statute be committed within five years of each other. Seward's indictment lists his two previous convictions by noting the dates of his convictions, not the dates of his offenses.

In any event, we find that this assignment of error fails because Seward raises it for the first time on appeal, and it is therefore procedurally barred. This Court does not generally address alleged defects in indictments which were not raised before the trial court. *Brandau v. State*, 667 So. 2d 1051, 1055 (Miss. 1995); *Bolen v. State*, 309 So. 2d 524 (Miss. 1975). Further, Seward stipulated to the two prior offenses in a pre-trial hearing, and thus, passed up an excellent opportunity to raise an objection to the language of the indictment.

## II. WHETHER THE STATE PROVED IN ITS CASE IN CHIEF THAT SEWARD HAD COMMITTED TWO PRIOR DUI OFFENSES.

At trial, the State never introduced evidence to the jury which would have shown that Seward had previously been convicted of the requisite two prior DUI offenses as part of the elements of the case. However, the reason that such evidence was never introduced is because there was an extensive pre-trial discussion in a hearing to determine whether or not the State would have to introduce such evidence or not. The prosecutor in this case stated unequivocally that it was not his belief that the convictions were elements of the crime to be charged. For his part, Seward stipulated to the prior convictions at the pre-trial hearing. His attorney stated that he had intended to introduce a motion in limine to keep out the convictions because he thought that they were unduly prejudicial. Thus, it would appear that no one was sure as to whether or not the priors were elements of the felony charge. However, Seward's counsel did not want the charges introduced, not because the court would have had to dismiss the case without the introduction of the testimony, but because it was his opinion that the jury might be prejudiced against Seward if the prior convictions were introduced. It would appear that this was a matter of trial strategy. Furthermore, at the close of the prosecution's case-in-chief, the defense made a motion for a directed verdict. As its basis for the motion, the defense stated that there was insufficient testimony to show that Seward had been under the influence aside from the State's assertions that Seward smelled strongly of alcohol and that he had been belligerent on the night in question. The defense never mentioned that there had been no showing that there were two prior convictions. We believe that the reason that the defense had not done so was because it was understood that the prior convictions had been stipulated to. It is well settled that a criminal defendant cannot seek redress from errors which are of his own creation. *Evans v. State,* 547 So. 2d 38, 40 (Miss. 1989); *Singleton v. State*, 518 So. 2d 653, 655 (Miss. 1988). If it was error to not include the prior convictions as elements of the defense, then certainly, it was error of the defense's own making.

Finally, we find that whether or not Seward was guilty of felony DUI in this case turns solely upon whether or not he was driving under the influence. The jury's sole responsibility was to determine if that was the case. If the jury found that he was driving under the influence, as it did, the number of prior convictions only becomes important at sentencing which must be done. The parties had stipulated that the priors would come in at sentencing in accordance with UCCR 11.03. As a result,

this Court finds that this assignment of error is without merit.

## III. WHETHER THERE WAS PROBABLE CAUSE FOR THE ARREST.

Seward next alleges that Officer Johnson had insufficient cause to stop and question him. He points to possible conflicting testimony given by Johnson as to whether Seward was actually operating the car or appeared to be cleaning or vacuuming it out. Seward claims that this conflict in testimony impeaches Johnson's credibility as a witness.

The proper place to first question probable cause is at a probable cause hearing. If Seward had questions about whether or not Johnson truly had probable cause to stop him, he should have requested a probable cause hearing. There is no record of a probable cause hearing before this Court for review. This Court generally may not consider allegations of error which were not raised in the trial court. *Copeland v. State,* 423 So. 2d 1333, 1334 (Miss. 1982). This rule is founded, in part, on the fair assumption that an accused, in the face of incarceration, will make and preserve all objections available to him and is supported by this Court's hesitancy to place the trial judge in error on a matter not presented to him for decision. *Id.*

Because Seward did not raise the question of probable cause in the trial court, the question of Johnson's credibility and of whether or not he impeached himself was one for the jury, who is the arbiter of the credibility of all witnesses. *Bradley v. State*, 562 So. 2d 1276, 1282 (Miss. 1990). As a result, we find this issue to be meritless.

## IV. WHETHER SEWARD WAS UNCONSTITUTIONALLY DENIED APPRISAL OF THE CONSEQUENCES OF THE REFUSAL TO TAKE THE INTOXILYZER.

Seward claims that since he was not informed that his license could be suspended for a year for refusing to take an Intoxilyzer, then this case should be reversed. Although it may be true that Seward was not advised of the consequences of refusing the Intoxilyzer, this Court cannot see the relevance of that proposition to the case at hand. As a consequence of refusing to take a breathalyzer, an offender may have his license suspended for 90 days. **Miss. Code Ann.** § 63-11-5(2) (1996). For one such as Seward, who was already operating the vehicle with a suspended license, refusal to take a breath test would result in a one year suspension. *Id.*

Breathalyzer test results are not an absolute necessity to the determination of whether a driver is intoxicated. If they were, Seward's case could never have come to trial, since, obviously, he did not take a breath test. The natural remedy for failure to inform a driver that a license could be suspended for the failure to take a breath test would be reinstatement of the license, not reversal of a criminal conviction for driving under the influence. As a result, this Court finds that this issue is meritless.

## V. WHETHER SEWARD WAS PREVENTED FROM TAKING AN INDEPENDENT BLOOD TEST.

Seward claims that the police denied him the opportunity to take a blood test at his own expense which would have corroborated his alibi that the strong odor of alcohol on his breath was mouthwash. Seward had a statutory right to have such a test administered pursuant to **Miss. Code Ann.** § 63-11-13 (1996). Seward testified that he asked to have such a test done, but his request was

refused. Johnson testified that Seward never asked for such a test. Johnson also testified that Seward refused to take a breathalyzer as well as to answer questions regarding whether or not he was taking medication, which would have included the mouthwash. T.J. Hill, the ambulance attendant who attempted to examine Seward at the police station, found Seward to be totally uncooperative. Therefore, the jury, the final arbiters of the evidence, had credible testimony by which they could determine that Seward had not been refused such tests but that he had been uncooperative or that he had never asked. As a result, we find that this issue is meritless.

## VI. WHETHER SEWARD WAS ENTITLED TO PUBLISH HIS JURY INSTRUCTION.

Seward assigns as error the refusal of his proffered jury instruction D-1. That instruction provided, in pertinent part:

> It is not unlawful to drink alcoholic beverages and then operate a motor vehicle. The prohibition is against operating a motor vehicle while under the influence of alcohol. There is no set standard as to the quantity of alcohol a person must consume before a person is so affected by an alcoholic beverage that the person does not possess that clearness of intellect and control of himself as he otherwise would have . . . . If a person consumes an alcoholic beverage and is not thereby influenced in the operation of his vehicle, there is no violation of the statute. . . .

The trial court found that a portion of Jury instruction S-1 covered the same ground as the defense's proposed instruction. The trial court also questioned whether or not the instruction was a correct statement of the law. As a result, the trial court denied the proposed jury instruction and granted that of the State.

Seward was entitled to have jury instructions given which presented his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence. *Heidel v. State,* 587 So. 2d 835, 842 (Miss. 1991).

We find that the proposed instruction did not fit with Seward's theory of the case. Seward testified that he had drank only one beer approximately twelve hours before the time of his arrest. Therefore, his theory of the case is that he could not have been driving under the influence of alcohol if he had not been drinking. The instruction addresses a theory of "drinking, but not drunk." Further, there was no evidence presented which would have tended to show that Seward's mouthwash was the culprit of his appearance of intoxication. As a result, the trial judge was not erroneous in denying the proposed jury instruction, and this Court finds this issue to be without merit.

## VII. WHETHER IT WAS ERROR TO DENY SEWARD BOND PENDING APPEAL.

Seward was sentenced to serve three years in the custody of the Mississippi Department of Corrections with eighteen months suspended. After sentencing, Seward made a motion for bond pending appeal, and the trial court denied Seward's motion finding Seward to pose a special danger to the community. Seward has subsequently served his sentence and has been released from the custody of the Mississippi Department of Corrections. Therefore, this Court finds that this issue is moot.

## CONCLUSION

This Court finds that (1) Seward's indictment was sufficient to charge him with a felony, as it met the requirements set forth in ***Page v. State***; (2) Seward stipulated to his two prior DUI offenses, thus negating the need for the State to prove the prior offenses as a necessary element of the case; (3) Seward waived the issue of probable cause by not requesting a probable cause hearing at the trial court level; (4) Johnson's alleged failure to inform Seward of the consequences of a refusal to take a breathalyzer is irrelevant to the disposition of this case; (5) Johnson's alleged refusal to allow Seward to take an independent blood test is irrelevant to the disposition of this case; (6) Seward's proposed jury instruction was not supported by either the evidence or his own theory of the case; (7) since Seward has served his sentence, the trial court's denial of bond pending appeal is moot. Thus, finding no merit among Seward's assignments of error, we affirm his conviction and sentence.

**CONVICTION OF FELONY DRIVING UNDER THE INFLUENCE AND SENTENCE OF THREE (3) YEARS, WITH EIGHTEEN (18) MONTHS SUSPENDED, LEAVING EIGHTEEN (18) MONTHS TO SERVE IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF ALL COURT COSTS AND FINE OF $2,000.00 AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, ROBERTS AND MILLS, JJ., CONCUR.**