# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 96-KA-01405-SCT

*ANTONIO SIMMONS, JOSEPH WELLS, JR., a/k/a
JOSEPH BRADLEY WELLS AND BOBBY
VARNADO, a/k/a BOBBY VARNADO, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/15/96 |
| TRIAL JUDGE: | HON. KEITH STARRETT |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | JOSEPH A. FERNALD, JR. |
| | JACK G. PRICE |
| | B. CALVIN COSNAHAN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: BILLY L. GORE |
| DISTRICT ATTORNEY: | DUNN LAMPTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/29/1998 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 11/19/98 |

**BEFORE PITTMAN, P.J., ROBERTS AND SMITH, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

¶1. This out-of-time criminal appeal comes before the Court challenging a jury verdict of guilty issued against the Appellants from the Circuit Court of Lincoln County, Mississippi, Keith Starrett, Circuit Judge, presiding.

¶2. According to the testimony of two young girls, Girl A and Girl B[1], aged 11 and 13 respectively at the time of the incident, the three Appellants forced the girls to perform oral sex and then vaginally raped them on January 21, 1996.

¶3. Following a three (3) day trial by jury on August 12-14, 1996, the three (3) Defendants/Appellants,

Antonio Simmons ("Simmons"), Joseph Wells ("Wells") and Bobby Varnado ("Varnado"), were convicted of the following: conspiracy (to commit kidnaping, rape and sexual battery) charged in count one (1); sexual battery charged in counts four (4) and five (5) and rape charged in counts six (6) and seven (7). The convictions followed a seven (7) count indictment charging the defendants with multiple sexual offenses committed on January 21, 1996.

¶4. **Count one (1)** of the indictment charged the Appellants with conspiracy to commit the crimes of kidnaping, rape and sexual battery. **Count two (2)** charged the Appellants with kidnaping Girl B and **count three (3)** charged the Appellants with kidnaping Girl A. **Count four (4)** charged the Appellants with sexual battery (oral sex) against Girl B, while **count five (5)** charged them with sexual battery (oral sex) against Girl A. **Count six (6)**charged the Appellants with forcible rape of Girl B, a female child under fourteen years of age, and **count seven (7)** charged them with the forcible rape of Girl A, also a female child under fourteen years of age.

¶5. The jury convicted the Defendants/Appellants of all charges except counts two (2) and three (3) of kidnaping, of which all three were acquitted.

¶6. The jury was not able to fix a penalty for the charges of rape. Following the pre-sentence reports, Judge Starrett imposed the following sentences.

¶7. Each of the Defendants/Appellants received concurrently running sentences and a period of post-release supervision. In sum, Simmons received twenty-three (23) years to serve with eleven (11) years suspended. Wells was sentenced to serve sixteen (16) years with eight (8) years suspended. Varnado basically received a sixteen (16) year sentence with eight (8) years suspended.

¶8. On appeal, the Appellants are represented individually by different counsel, and have filed separate briefs. Aggrieved by the decision reached in the court below, the Appellants individually raise the following assignments of error:

**SIMMONS' ASSIGNMENTS OF ERROR**

> **I. THE COURT ERRED IN ALLOWING THE MOTHER OF GIRL B TO TESTIFY AS TO HEARSAY RELATED TO HER BY GIRL B.**

> **II. THE COURT ERRED IN ALLOWING DR. LEROY BYRD TO TESTIFY CONCERNING FACTS INVOLVED WITH THE RAPE, AS RELATED TO HIM BY THE VICTIMS, AT THE TIME OF HIS MEDICAL EXAMINATION OF THE VICTIMS.**

> **III. THE COURT ERRED IN ALLOWING THE PROSECUTION TO INTRODUCE TESTIMONY CONCERNING OUT-OF-COURT LINEUP IDENTIFICATION OF VARNADO BECAUSE EVIDENCE OF THE LINEUP HAD BEEN PREVIOUSLY SUPPRESSED AS IT WAS IMPERMISSIBLY SUGGESTIVE.**

> **IV. THE COURT ERRED IN OVERRULING DEFENSE COUNSEL'S MOTION FOR A DIRECTED VERDICT.**

**WELLS' ASSIGNMENTS OF ERROR**

**I. THE COURT IMPROPERLY ALLOWED DR. LEROY BYRD TO TESTIFY AS AN EXPERT ON RAPE.**

**II. THE VERDICT OF THE COURT IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AS PRESENTED AT TRIAL.**

## VARNADO'S ASSIGNMENTS OF ERROR

**I. THE TRIAL COURT ERRED IN ALLOWING DR. LEROY BYRD TO TESTIFY AS AN EXPERT IN REGARDS TO THE INJURIES OF GIRL A AND GIRL B.**

**II. THE VERDICT OF THE JURY IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND IS NOT SUFFICIENT TO SUSTAIN THE CONVICTION.**

¶9. This Court holds that the Appellants' points of error are without merit. The trial court and jury, after hearing all of the evidence, chose to convict the Appellants of the charges related to the rape of Girl A and Girl B. This Court can find no error which would require us to disturb the jury's guilty verdict. As a result, the convictions of Antonio Simmons, Bobby Varnado and Joseph Wells are affirmed.

## STATEMENT OF FACTS

¶10. On the afternoon of Sunday, January 21, 1996, Girl A and Girl B, ages 11 and 13 respectively, who were residents of the Brookhaven area, willingly entered an automobile driven by nineteen (19) year old Antonio Simmons, and occupied by nineteen (19) year old Bobby Varnado and eighteen (18) year old Joseph Wells. The Appellants drove to the Spanish Inn and attempted to rent a room, but decided not to stay at the motel. Girl A and Girl B testified that during the next three (3) or so hours, from 5:00 p.m. until 8:30 p.m., they were forced to perform oral and vaginal sex with Simmons, Varnado and Wells.

¶11. Girl A testified that the driver of the car, Simmons, told the girls that they could either perform oral sex or die. Girl A also testified that Wells and Varnado forced her to give them oral sex in the car soon thereafter. Girl A said that Varnado required her to have vaginal sex in an abandoned apartment house in Magnolia, Mississippi, a short time later.

¶12. Girl B testified that Simmons was the one who first suggested that the girls perform oral sex. Girl B said that Simmons forced her to perform oral sex on him in a McDonald's parking lot and threatened to kill her if she refused him. Girl B stated that she was forced to have vaginal sex with Simmons and Wells a short time later at the abandoned apartment house.

¶13. Varnado, the only Appellant who testified, denied that any sexual acts took place and claimed that the girls merely went joyriding with the three Appellants.

¶14. Subsequently, the Appellants dropped Wells off at his house and eventually returned the girls to Brookhaven, Mississippi. After the girls arrived at home, they were taken to a local hospital and examined by Dr. Leroy Byrd, III.

¶15. At trial the doctor was asked to identify the physical condition of the minor children. Dr. Byrd testified that upon examining the girls, he detected vaginal injuries due to excessive stretching in a concentric fashion. Dr. Byrd opined that the injuries he observed were consistent with those associated with forceful

penetration by a cylindrical object. Dr. Byrd also put together a standard rape kit containing samples of bodily fluids, the clothing of the victims and other items of evidence. The Defendants/Appellants objected to Dr. Byrd's testimony claiming that the doctor's area of practice, emergency medicine, did not qualify him as an expert in the area of gynecology.

¶16. At the close of the State's case-in-chief, all three of the Defendants/Appellants moved for a directed verdict of acquittal. The trial judge overruled the motion, finding that the State had made a prima facie showing as to each count.

¶17. The jury retired for deliberation and returned with a verdict of acquittal on the kidnaping charges and a guilty verdict with respect to all other charges. The Appellants now bring the following claims before this Court.

## DISCUSSION OF THE ISSUES

## SIMMONS' ASSIGNMENTS OF ERROR

### I. THE COURT ERRED IN ALLOWING THE MOTHER OF GIRL B TO TESTIFY AS TO HEARSAY RELATED TO HER BY GIRL B.

¶18. Simmons alleges in his first claim that the trial court committed reversible error when it allowed Girl B's mother to testify about a statement made by Girl B to her mother as it was inadmissible hearsay, elicited under duress. The Appellee asserts that the trial judge was correct in holding that Girl B's statement to her mother qualified as an exception to the hearsay rule under Miss. R. Evid. 803 (1) or (2).

¶19. The record indicates that Girl B and her siblings were expected to come home before dark, between 5:30 p.m. and 6:00 p.m. Some of Girl B's siblings and friends told the mother that Girl A and Girl B had gotten into a car with three men. When Girl B was late returning home, her mother became concerned and called the Brookhaven Police and her family to help locate the girl. After searching for Girl B in vain, her mother returned home around 9:00 p.m. where she found Girl B who had returned at approximately 8:30 p.m.

¶20. The mother testified that she told her daughter she was going to hug her first because she was alive and then spank her because she was late and had worried her family. The mother testified that Girl B appeared to be very disturbed. The mother said Girl B was shaking her leg and jumping around in an excited state. "When she's jumping, something is wrong," the mother said. "She never shakes." After observing her daughter's condition, the mother decided not to spank the girl.

¶21. After asking Girl B for the second time why she was late returning home and if anything had happened to her, Girl B replied, "Yes, mama, and it hurted." The Appellant objected to this statement as inadmissible hearsay. However, the trial judge overruled the objection and held that it was admissible by virtue of Miss. R. Evid. 803 (1) and (2). The thrust of Simmons' first argument is that the victim's statement did not qualify for the exceptions because it was made under duress from the mother who was angry with the child for being late and had threatened to spank her, thus eliminating the spontaneity of Girl B's statement.

¶22. The Mississippi Rules of Evidence 803 (1) and (2) provide exceptions to the hearsay rule and read as follows:

(1) **Present Sense Impression.** A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter.

(2) **Excited Utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

¶23. In *Evans v. State*, 547 So. 2d 38 (Miss. 1989), Sister M, a Catholic nun, was raped and related the incident to her roommate soon thereafter. This Court upheld the trial court's admission of the roommate's testimony about Sister M's statement holding:

To be admissible under this exception, the statement must be spontaneous. The question of spontaneity is to be decided upon the facts and circumstances of each individual case and such a determination is a question for the trial judge whose action in admitting the statement should not be held to be error unless this Court would be justified in concluding that under all and any reasonable interpretation of the facts the explanation could not have been spontaneous.

*Evans*, 547 So. 2d at 41 (quoting *Harris v. State*, 394 So. 2d 96, 98 (Miss. 1981)).

¶24. In the case *sub judice*, no error can be attributed to the trial court's decision. The record reflects that Girl B returned home approximately thirty (30) minutes before her mother. When the mother returned, Girl B was still quite agitated from the preceding events. While Girl B's mother did threaten to whip her and asked her questions concerning the night's events, it is clear that Girl B's statement was not motivated by fear of discipline from her mother. In the true spirit of the exceptions found in Miss. R. Evid. 803 (1) and (2), Girl B spoke out the anxiety of the traumatic events to which she had been subjected only a short time before. Therefore, the trial judge's decision to allow Girl B's statement into evidence was sound and is immune to reversal.

### II. THE COURT ERRED IN ALLOWING DR. LEROY BYRD TO TESTIFY CONCERNING FACTS INVOLVED WITH THE RAPE, AS RELATED TO HIM BY THE VICTIMS, AT THE TIME OF HIS MEDICAL EXAMINATION OF THE VICTIMS.

¶25. In Simmons' second point of error, he claims that statements made by Girl A and Girl B during their medical examinations by Dr. Byrd were inadmissible hearsay and the court erred in allowing them into evidence.

¶26. During the course of Dr. Byrd's examination of Girl A, she stated that she had been taken advantage of, she had never had sexual intercourse before and one individual had forced her to have vaginal intercourse that night. During Girl B's medical examination, she told Dr. Byrd that her vagina had been penetrated by her assailant's penis and she had been penetrated orally.

¶27. The trial judge held that statements from Girl A and Girl B to Dr. Byrd were admissible under Miss. R. Evid. 803 (4) as an exception to the hearsay rule. Rule 803 (4) states in part:

(4) **Statements for Purposes of Medical Diagnosis or Treatment.** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment, regardless of to whom the statements are made, or when the statements are made, if the court, in its discretion, affirmatively finds that the

proffered statements were made under circumstances substantially indicating their trustworthiness. . . .

¶28. The statements made to Dr. Byrd were entirely related to his diagnosis and treatment of the girls. The Appellant claims the statements were inadmissible because they did not relate to medical diagnosis. However, the record clearly reflects that the statements by the victims were elicited by Dr. Byrd in order to determine the proper course of medical treatment to pursue. Therefore, the trial court was correct in its application of Rule 803 (4) and properly admitted the statements made to Dr. Byrd. This claim is without merit and is denied.

### III. THE COURT ERRED IN ALLOWING THE PROSECUTION TO INTRODUCE TESTIMONY CONCERNING AN OUT-OF-COURT LINEUP IDENTIFICATION OF VARNADO BECAUSE EVIDENCE OF THE LINEUP HAD BEEN PREVIOUSLY SUPPRESSED AS IT WAS IMPERMISSIBLY SUGGESTIVE.

¶29. Simmons' third claim asserts that the trial court erred in allowing the State to re-examine Girl B's sister about her out-of-court lineup identification of Varnado.

¶30. The trial court had previously ruled in a suppression hearing, that the lineup was impermissibly suggestive and that any evidence of said lineup would be excluded. However, during the cross-examination of Girl B's sister, defense counsel for Varnado asked the sister if she had been shown any photographs or looked at any lineups. When the sister replied in the affirmative, defense counsel proceeded to assail the credibility of her in-court identification. Defense counsel attempted to demonstrate that the sister's in-court identification of Varnado was not based upon her memory of the events on January 21, 1996, but was a product of the suggestiveness of the out-of-court lineup.

¶31. The trial judge ruled as follows:

> That was what I understood the question to be and that suggests the impropriety of the lineup and the propriety of the in-court identification. That puts it at issue
>
> . . . .
>
> Well, I'm going to allow Mr. Rushing [the prosecutor] to rehabilitate his witness regarding the lineup. Her credibility insofar as the in-court identification has been attacked, on cross-examination it was attacked by Mr. Price's [defense counsel] cross-examination, suggesting that the in-court was tainted by an unduly suggestive lineup.

¶32. In *Jefferson v. State*, 386 So. 2d 200, 202 (Miss. 1980), we held that where defense counsel "opened the door" by interrogating a witness about the prior record of the defendant, it was proper for the prosecution to pursue the point in greater detail. Although the issue was procedurally barred, we addressed it on the merits and found that, "the alleged error does not require or justify a reversal of the cause for the reason that it clearly was injected into the case by appellant's attorney. To hold otherwise would give every accused a means of securing a reversal." *Id.*

¶33. We find that when Mr. Price attempted to impeach the witness by asking her if she had been shown any photographs or looked at any lineups, this "opened the door" for the prosecution. Therefore it was proper for the State to rehabilitate Girl B's sister by bringing out the fact that the sister, who had observed

Varnado as a front seat passenger inside Simmons' car on January 21, picked Varnado out of a lineup on April 2, 1996.

¶34. Additionally, Simmons fails to demonstrate how Girl B's identification of Varnado as a passenger in Simmons' car was prejudicial to his cause. Varnado himself, while testifying at trial, freely admitted that he was a passenger in Simmons' car on January 21. Therefore, neither error nor prejudice exists to validate this claim.

### IV. THE COURT ERRED IN OVERRULING DEFENSE COUNSEL'S MOTION FOR DIRECTED VERDICT.

¶35. In his final claim, Simmons argues that the trial court committed error by denying his motion for a directed verdict at the conclusion of the State's case-in-chief. After the trial judge denied the motion, Simmons waived his claim when he proceeded with his case. As we held in **Holland v. State**, 656 So. 2d 1192, 1197 (Miss. 1995). "When the defendant proceeds with his case after the state rests and the court overrules the defendant's motion for a directed verdict, the defendant has waived the appeal of that directed verdict." *See also*, **Weeks v. State**, 493 So. 2d 1280 (Miss. 1986); **Ruffin v. State**, 481 So. 2d 312, 316 (Miss. 1985); **Shavers v. State**, 455 So. 2d 1299, 1302 (Miss. 1984).

¶36. Simmons revived his motion at the close of all evidence. This Court has held that motions for a directed verdict, peremptory instructions and motions JNOV implicate the sufficiency of the evidence. *See* **Franklin v. State**, 676 So. 2d 287, 288 (Miss. 1996). The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence.

¶37. In **Wetz v. State**, we explained that:

> Put otherwise, all of these motions - the motion for directed verdict made at the end of the case for the prosecution, the request for a peremptory instruction at the end of all of the evidence or the motion for a directed verdict at that point, or finally, a motion for judgment of acquittal notwithstanding the verdict - are procedural vehicles for challenging the sufficiency of the case for the prosecution. Each requires that the court consider all of the evidence before it at the time the motion is considered. When the sufficiency of the evidence is challenged on appeal, this Court properly should review the Circuit Court's ruling on the last occasion when the sufficiency of the evidence was challenged before the trial court.

**Wetz v. State**, 503 So. 2d 803, 808 (Miss. 1987).

¶38. The evidence presented to the court was sufficient such that the trial judge's denial of the motions for a directed verdict of acquittal was proper.

¶39. The State offered positive, in-court identifications by both victims of all three of the Defendants. Additionally, Dr. Leroy Byrd, an expert in the field of emergency medicine, testified that the vaginal injuries he observed on both of the victims were due to stretching consistent with penetration by a cylindrical object. Finally, Kathy Brock, a forensic serologist, found sperm on Girl A's panties and on the vaginal fluid samples procured by Dr. Byrd. Brock also detected sperm on the vaginal fluid samples taken from Girl B.

¶40. Clearly, the evidence was legally sufficient to support Simmons' and the other Appellants' convictions. As a result, the trial court properly denied the Appellants' motions for a directed verdict and as such was

not in error.

## WELLS' AND VARNADO'S ASSIGNMENTS OF ERROR

¶41. As Wells and Varnado advance essentially identical claims, we will address them simultaneously.

### I. THE COURT IMPROPERLY ALLOWED DR. LEROY BYRD TO TESTIFY AS AN EXPERT ON RAPE.

¶42. The Appellants' first point of error is that Dr. Byrd was not qualified to testify as an expert as to the gynecological aspects of his treatment and examination of girls A and B.

¶43. Mississippi Rule of Evidence 702 concerns the role of expert witnesses and states the following:

**Rule 702. Testimony by experts**

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

¶44. Expert testimony is admissible where it will assist the trier of fact to understand the evidence or determine a fact in evidence. *Lentz v. State*, 604 So. 2d 243, 246 (Miss. 1992). Questions concerning the qualification of a person to testify as an expert are committed to the sound discretion of the trial court and this Court does not reverse such decisions absent a showing that such discretion has been abused and the witness is clearly not qualified. *Cooper v. State*, 639 So. 2d 1320, 1325 (Miss. 1994). The test to determine whether a witness is qualified to give expert testimony or opinion is whether the witness possesses peculiar knowledge or information regarding relevant subject matter that is not possessed by the layman. *May v. State*, 524 So. 2d 957, 963 (Miss. 1988).

¶45. In determining whether the trial court erred in allowing Dr. Byrd to testify as an expert in this context, a review of his employment history and credentials is instructive.

¶46. Dr. Leroy Byrd, III, graduated from the University of Texas Medical School in 1970. In 1973-74, Dr. Byrd was employed as a full-time emergency physician for fifteen months. Dr. Byrd next engaged in family practice from 1975 through 1983 and has maintained an emergency medicine practice from 1983 until the present. Dr. Byrd became board certified through the American Board of Emergency Medicine in 1988.

¶47. Dr. Byrd testified that during the quarter century he has been practicing medicine, he has had the opportunity to examine numerous patients who complained of sexual assault. He also testified that he has experience in administering a rape examination and putting together the standard forensic rape kit.

¶48. Varnado argued that, "Dr. Byrd's expertise clearly shows that he was a board certified emergency room physician [and] there was nothing to indicate that he had specialized training in rape investigations and/or specialized training in obstetrics/gynecology."

¶49. We disagree. While Dr. Byrd may not specialize in gynecology, his training in medical school and twenty-five (25) years of experience as a family practitioner and emergency room doctor certainly qualify him to testify as an expert in the case at bar. As a family and emergency medicine practitioner, Dr. Byrd is required to have a thorough knowledge of many areas of medicine (including gynecology) due to the varied

injuries and illnesses he encounters. Due to the urgency of the patients' condition, and the need to gather evidence in a timely fashion, emergency room physicians do treat rape victims. Dr. Byrd testified that "[i]n emergency room practice, we do this exam once every month or two."

¶50. The trial judge was correct in holding:

> Well I think this witness is a licensed physician and that its within his field of expertise. He may not be a gynecological expert, but he is qualified as accepted, and that would go more as to the weight than to the admissibility, and you will be allowed cross-examination of the witness.

¶51. Dr. Byrd examined Girl A and Girl B. He treated them for vaginal injuries and collected fluid specimens and other evidence for the rape kit. Due to the qualifications mentioned above, Dr. Byrd was well qualified to relay his observations to the jury. As a result, this claim does not present any error on the part of the trial court and it is denied.

## II. THE VERDICT OF THE JURY IS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE WHICH IS NOT SUFFICIENT TO SUSTAIN THE CONVICTION.

¶52. In their second and final point of error, the Appellants contend that the verdict of the jury is contrary to the overwhelming weight of the evidence.

¶53. The standard of review to determine if there is sufficient evidence to convict a defendant is whether the evidence, when viewed in the light most favorable to the government with all reasonable inferences and credibility choices made in support of a conviction, allows a rational trier of fact to find every element beyond a reasonable doubt. *Ballenger v. State*, 667 So. 2d 1242, 1252-53 (Miss. 1995).

¶54. The jury's verdict will not be disturbed by this Court unless it is so contrary to the overwhelming weight of the evidence that allowing it to stand would sanction unconscionable injustice. *Wash v. State*, 521 So. 2d 890, 896 (Miss. 1988); *Tucker v. State*, 647 So. 2d 699, 702 (Miss. 1994).

¶55. The Appellants complain that discrepancies and conflicts in the testimony of the two victims render the jury verdict unreliable and is a miscarriage of justice.

¶56. For example, the victims originally told the police that the Appellants used a gun to threaten them during the incident. However, during the trial, the girls testified that a gun was not used. Also, Girl A testified that the oral sex was performed in the car on the way to Magnolia, while Girl B claimed it happened in the parking lot of a McDonald's. Finally, there was testimony that the girls were seen laughing and that they had numerous opportunities to call out for help at gas stations and other public places where the Appellants stopped, but did not.

¶57. This Court recognizes that the record does contain some discrepancies between the testimony of the two victims. Any inconsistencies found in the girls' testimony most certainly affected the credibility and weight of their evidence in the eyes of the jury. However, this Court has held that "[t]he jury is the sole judge of the weight and credibility of the evidence." *Byrd v. State*, 522 So. 2d 756, 760 (Miss. 1988). Additionally, in *Jones v. State,* 381 So. 2d 983, 989 (Miss. 1980) we found that,"[t]he jury has the duty to determine the impeachment value of inconsistencies or contradictions as well as testimonial defects of perception, memory and sincerity."

¶58. As stated above, the prosecution offered positive, in-court identifications by the girls of the three Defendants/Appellants. Dr. Byrd testified to the presence of vaginal injuries to both victims due to stretching by penetration with a cylindrical object. Kathy Brock, a forensic serologist, found sperm in the girls' vaginal fluid samples contained in the rape kit assembled by Dr. Byrd.

¶59. The jury's guilty verdict is not manifestly against the weight of the credible evidence. The trier of fact was properly presented with all sides of the case and returned the verdict that it believed to be just. As a result, this Court finds no basis for disturbing the jury's guilty verdict.

## CONCLUSION

¶60. The verdict rendered by the jury below is affirmed. While the Appellants raise several points of error, they are without merit. The trial judge and jury were presented with credible evidence by both sides and chose to convict the Appellants of the charges relating to the rape of Girl A and Girl B. This Court can find no error in the proceedings below and accordingly affirms the convictions of Antonio Simmons, Bobby Varnado and Joseph Wells.

¶61. **AS TO ANTONIO SIMMONS: COUNT I: CONVICTION OF CONSPIRACY TO COMMIT THE CRIMES OF KIDNAPPING, SEXUAL BATTERY (TWO COUNTS) AND RAPE (TWO COUNTS) AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT IV: CONVICTION OF SEXUAL BATTERY OF GIRL B AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT V: CONVICTION OF SEXUAL BATTERY OF GIRL A AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT VI: CONVICTION OF RAPE OF GIRL B AND SENTENCE OF TWENTY THREE (23) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT VII: CONVICTION OF RAPE OF GIRL A AND SENTENCE OF TWENTY THREE (23) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. THE LAST ELEVEN (11) YEARS TO BE SERVED ON POST RELEASE SUPERVISION. APPELLANT SHALL PAY FINE OF $1,000.00 TO THE VICTIM'S COMPENSATION FUND, $500.00 IN ATTORNEY'S FEES AND ALL COURT COSTS. SENTENCE IN ALL COUNTS TO RUN CONCURRENTLY. APPELLANT IS GIVEN CREDIT FOR JAIL TIME SERVED.**

**AS TO JOSEPH WELLS, JR., A/K/A JOSEPH BRADLEY WELLS: COUNT I: CONVICTION OF CONSPIRACY TO COMMIT THE CRIMES OF KIDNAPPING, SEXUAL BATTERY (TWO COUNTS) AND RAPE (TWO COUNTS) AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT IV: CONVICTION OF SEXUAL BATTERY OF GIRL B AND SENTENCE OF SIXTEEN (16) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT V: CONVICTION OF SEXUAL BATTERY OF GIRL A AND SENTENCE OF SIXTEEN (16) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT VI: CONVICTION OF RAPE OF GIRL B AND SENTENCE OF SIXTEEN (16) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT VII:**

CONVICTION OF RAPE OF GIRL A AND SENTENCE OF SIXTEEN (16) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. THE LAST EIGHT (8) YEARS TO BE SERVED ON POST RELEASE SUPERVISION. APPELLANT SHALL PAY FINE OF $1,000.00 TO THE VICTIM'S COMPENSATION FUND, ATTORNEY'S FEES, OBTAIN HIS G.E.D. AND PAY ALL COURT COSTS. SENTENCE IN ALL COUNTS TO RUN CONCURRENTLY. APPELLANT IS GIVEN CREDIT FOR JAIL TIME SERVED.

AS TO BOBBY VARNADO, A/K/A BOBBY VARNADO, JR.: COUNT I: CONVICTION OF CONSPIRACY TO COMMIT THE CRIMES OF KIDNAPPING, SEXUAL BATTERY (TWO COUNTS) AND RAPE (TWO COUNTS) AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT IV: CONVICTION OF SEXUAL BATTERY OF GIRL B AND SENTENCE OF SIXTEEN (16) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT V: CONVICTION OF SEXUAL BATTERY OF GIRL A AND SENTENCE OF SIXTEEN (16) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT VI: CONVICTION OF RAPE OF GIRL B AND SENTENCE OF SIXTEEN (16) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. COUNT VII: CONVICTION OF RAPE OF GIRL A AND SENTENCE OF SIXTEEN (16) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. THE LAST EIGHT (8) YEARS TO BE SERVED ON POST RELEASE SUPERVISION. APPELLANT SHALL PAY FINE OF $1,000.00 TO THE VICTIM'S COMPENSATION FUND AND PAY ALL COURT COSTS. SENTENCE IN ALL COUNTS TO RUN CONCURRENTLY. APPELLANT IS GIVEN CREDIT FOR JAIL TIME SERVED.

PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR.

---

1. The parties were given assumed names in order to protect their privacy and innocence as children.