John Ray Wilson was jointly indicted with Walter Smith in the Circuit Court of Warren County, Honorable John E. Ellis, presiding, upon counts of burglary and grand larceny. The trial judge granted a directed verdict of not guilty in favor of Smith at the conclusion of the State's case, and, after all the evidence was introduced, the jury found Wilson guilty as charged. He has appealed to this Court and assigns six errors in the trial below. *Page 1143 
The home of Vernon Smith, 3324 Indiana Avenue, Vicksburg, Mississippi, was burglarized on December 29, 1980, the burglary being discovered when the Smiths returned home around 9:05 in the evening. They discovered the front door had been broken and was standing open, and drawers and cabinets in the home had been ransacked. The loss of personal property aggregated approximately $20,000 and included a fur coat, television set, cassette player, diamond and gold jewelry, and silverware. On January 1, 1981, they were informed by the Vicksburg Police Department that some of their property had been recovered and they went to the police station and identified a television set, cassette player, some jewelry and a personalized pen and money clip.
The Smiths lived near the golf course and a Kentucky Fried Chicken establishment was operated approximately one-fourth mile from their home. The police officers received a teletype from the Champaign, Illinois police department advising that Johnny Wilson (appellant), 1001 Monroe Street, Apt. # 3, Vicksburg, Mississippi, was wanted for burglary in Champaign. The mode of operation in the crimes was similar. Officer Williams and others began a stakeout at the above address about 11 p.m. on December 31, 1980. After a short while, they saw three black males come out of a doorway of the apartment building and leave in an automobile. The officers had information from a confidential informant that stolen articles were in the apartment. They arrested the three individuals and returned to the apartment building where they saw a black female dart into the apartment. After receiving no response from the individual within, the officers broke in the door. Upon entering the apartment, they saw the television set and cassette player in the living room.
At this juncture, the search was halted, and Detective Williams left and obtained a search warrant. A thorough search of the apartment was conducted, turning up items of silver, firearms, and cameras. Alfonso Williams, the third black male arrested, testified that he had been with appellant and Lisa Porter (the young black female seen running into the apartment on January 1) on the night of the burglary; that he met them at a bar and appellant took him to the Kentucky Fried Chicken place on Indiana Avenue where he ordered something to eat; that appellant left, saying he would be back in a few minutes, that he "had to make a run"; that in approximately twenty minutes, appellant and Lisa Porter returned, coming from the direction of the golf course, where the Vernon Smith family resided; that, when Williams re-entered the car, he saw a television set in it similar to the Smith set, which appellant said he had just picked up; and that appellant had a sack like a pillowcase, and the contents sounded like metal.
 I.
Did the lower court err in declining to quash the indictment because of racial discrimination in the selection of the grand jury foreman?
Prior to trial, a hearing was held on motion to quash the indictment, which stated that there had been a systematic exclusion of members of the Negro race as foremen of grand juries in Warren County. The 1970 Census statistics were introduced, indicating that the population of Warren County was 58.9% white and 41.1% non-white. A list of grand jury foremen dating from 1949 through the February 1981 Term of court contained only the names of whites. Three grand juries are empaneled each year in Warren County, and the foreman is appointed by the judge. No evidence was offered by the State but the court was requested to take judicial notice that the most recent grand jury foreman appointed was black.
Mitchell v. Rose, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979), a Tennessee case, involved the "key man" system of jury selection. In Herring v. State, 374 So.2d 784, 786 (Miss. 1979), after discussing the Rose case and setting out the jury selection method which prevails in Mississippi, the Court said: *Page 1144 
 Thus, in Mississippi (unlike Tennessee) the grand jury foreman is appointed from a selection method, which, from the very inception, has been a random process and non-discriminatory. No attack has been made upon the constitutionality of that selection method. In Mitchell v. Rose, supra [570 F.2d 129], at 134, the Court of Appeals stated:
 "While the facial constitutionality of the key man system has been upheld, it has been frequently recognized as a method particularly subject to abuse, and therefore subject to close scrutiny by the courts. We note, as has the Supreme Court on numerous occasions, that random selection methods similar to the federal system would avoid most of the potential for abuse found in the key man system, and would probably eliminate challenges such as the State of Tennessee faces here." 570 F.2d at 134, fn. 5.
We are mindful that in Guice v. Fortenberry, 661 F.2d 496
(5th Cir. 1981), where the population was approximately 60% black and white grand jury foremen had been selected thirty-one consecutive times in the parish (Louisiana), the Court said there was the likelihood that facts could be presented on an evidentiary hearing entitling the petitioners to relief.
As was stated in Herring, supra, the new jury laws in Mississippi became effective in 1975, and operation of the grand juries will not precede that date in discussing the question. Considering the Mississippi statute, and, that, under same, no prejudice resulted to the appellant,[1] we are of the opinion the lower court did not commit reversible error in declining to quash the indictment.
 II.
Did the lower court err in failing to require disclosure of the identity of the confidential informant?
The appellant contends the identity of the confidential informant, who gave information to officers that stolen articles were in the Wilson apartment, should be disclosed. In Pace v.State, 407 So.2d 530, 533 (Miss. 1981), the Court said:
 There is no absolute rule requiring disclosure of an informer's identity. Recognition of the public interest and effective law enforcement has led to a privilege, although not absolute, of the prosecution to refuse disclosure of the identity of a confidential informer. Rovario v. U.S., 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). In Rovario,
the United States Supreme Court stated:
 Where the disclosure of the informer's identity, or of the contents of his communication is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. (353 U.S. at 60, 61, 77 S.Ct. at 628, 1 L.Ed.2d at 645).
 In applying this principle, we have stated:
 The proper rule regarding the circumstances under which the identity of the informer should be disclosed was stated in Young v. State, 245 So.2d 26 (Miss. 1971):
 Ordinarily, disclosure of the identity of an informer, who is not a material witness to the guilt or innocence of the accused, is within the sound discretion of the trial court. Strode v. State, 231 So.2d 779 (Miss. 1970). On the other hand, where the informer is an actual participant in the alleged crime, the accused is entitled to know who he is. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). . . . (245 So.2d at 27).
 [Mills v. State, 304 So.2d 651, 654 (Miss. 1974)].
See also Daniels v. State, 422 So.2d 289 (Miss. 1982); Sims v.State, 313 So.2d 27 (Miss. 1975); Hemphill v. State,313 So.2d 25 (Miss. 1975); Hardy v. State, 313 So.2d 26 (Miss. 1975). *Page 1145 
Here, the confidential informant did not participate in the burglary and his/her testimony as a witness was not relevant or material. Therefore, the lower court did not err in declining to require him to be identified.
 III.
Did the lower court err in overruling appellant's motion to suppress evidence obtained through an illegal search?
As mentioned hereinabove, the record indicates that appellant had two apartments in Vicksburg, one of which was on Monroe Street where the stolen articles were recovered; that the officers had teletype information from Champaign, Illinois, appellant lived at 320 Monroe Street, and was wanted for burglary in Champaign; that they had information from a confidential informant appellant kept stolen articles in the apartment at 302 Monroe Street and they had completed a stakeout of the apartment.
Alfonso Williams testified that on December 31, 1980, Wilson picked him up around 10 p.m. and they stopped at the Monroe Street apartment; and that appellant had two apartments and two different "old ladies" living in each of them.
The State contends that the Monroe Street apartment was not appellant's, and, therefore, appellant did not have standing to raise the question that his constitutional rights against unlawful searches and seizures had been violated. Under the facts of this case, we reject that argument. The State argues that there were outstanding warrants for appellant and that the officers were authorized to enter the apartment on the belief that the subject of the warrant was inside (contending that the apartment belonged to Lisa Porter).[2] Detective Kenny Williams testified that they did not have arrest warrants for Wilson and Smith but did have a teletype from Champaign, and they went to the apartment looking for appellant. In Payton v. New York,445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), the court held that police could not constitutionally enter a suspect's home without a warrant in order to make a routine felony arrest.
We are of the opinion that the search of appellant's apartment on Monroe Street was unauthorized and in violation of his right to be free from unlawful searches and seizures; that the lower court erred in declining to suppress the evidence obtained as a result of the search; and that such action requires reversal.
 IV.
Did the district attorney's closing remarks comment on appellant's failure to testify?
While the judgment must be reversed for the reason stated above, and the present question should not arise on the new trial, we feel compelled to address the question in order to impress upon district attorneys that they must refrain from remarks in their arguments which constitute error. We have discussed this problem many times, yet, prosecuting attorneys continue to make improper and prejudicial remarks in argument, which put the trial judge in error, regardless of how well he conducts the trial. According to a bill of exceptions signed by the trial judge, the district attorney, responding to a previous argument made by defense counsel, stated:
 That Mr. Vollor referred to all the things that the State didn't do and could have done. But what about the things Mr. Vollor didn't do. Where was the explanation as to where the TV and radio came from.
(The defendant did not testify).
Objection was made to the remarks. The Court said: *Page 1146 
 BY THE COURT: During the final argument of the district attorney to the jury, the district attorney proceeded with argument to the effect that there was no explanation how that television got in the apartment. That statement or that argument to the jury resulted in an objection by defense counsel. The Court sustained defendant's objection. Defense counsel indicated that he wanted to see the Court outside the presence of the jury or to be permitted to approach the bench which would have disrupted final arguments. The Court informed Mr. Vollor that if he had any further objections or motions, to proceed and make them at that time. He did not make a motion or make a request in front of the jury other than to see the Court in chambers and outside the presence of the jury. The Court then, on its own, without being requested to do so, instructed the jury to disregard that argument as made by the district attorney. The Court further instructed the district attorney that there was an instruction given to the jury that stated that it did not evolve upon the defendant to give any explanation whatsoever. The district attorney then continued in his final arguments to the jury and he did desist in making any further comment casting a responsibility upon defense counsel or defendant to come forward with an explanation of how the television got to the room. The Court, in observing all of the arguments of counsel, both for the State and for the defendant, is of the opinion that no prejudice against the defendant was had by such comments of the district attorney.
 Further, the Court would emphasize that without being requested by defense counsel, the Court on its own instructed the jury and requested the jury to disregard the statement and that type argument as made by the district attorney. Therefore, the Court is of the opinion that the motion for a mistrial being made at this junction should and the same is hereby overruled.
The trial judge recognized that the district attorney's statement was a comment on the appellant's failure to testify. District attorneys must not directly, or by innuendo and insinuation, comment on a defendant's not testifying. Any person competent to be a prosecuting attorney knows that elementary principle of law. If a prosecuting attorney, who is presumed to know better, persists in making erroneous and prejudicial remarks in his argument before the jury, then the trial court should deal harshly with him to the extent of sanctions, reprimands and contempt.[3] This Court will not look for some reason to excuse such action of a prosecuting attorney, even though a new trial would be expensive to the people of the county. Such expense, fault and blame should be placed at the door of the person who is responsible for it.
 V.-VI.
The appellant contends that he was prejudiced by being led handcuffed along the hall to the courtroom where jurors were standing, and that the evidence was insufficient to support a guilty verdict. In view of the fact that we have sustained Assignment of Error III, it is not necessary to address these questions.
The judgment of the lower court is reversed and the case is remanded for a new trial.
REVERSED AND REMANDED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.
[1] Guice, supra, held that the fact of no prejudice did not aid the prosecution.
[2] In Steagald v. United States, 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), the court held that, although an arrest warrant authorized seizure of the named individual, it does not authorize entry into a third person's home based on the officers' belief that the person might be inside (this warrant theory was on the testimony of Detective Bob Woods that warrants were outstanding for Wilson in Champaign, Illinois).
[3] One time is too much. This means any time in any case, after the first time. *Page 1147