# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2005-KA-01729-SCT

*WILLIE JOE WRIGHT*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/24/2005 |
| TRIAL JUDGE: | HON. ROBERT WALTER BAILEY |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CRAIG A. CONWAY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL<br>BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/05/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The Lauderdale County Circuit Court found Willie Joe Wright guilty of burglary and rape. He was sentenced to serve two consecutive twenty-five year sentences. Wright claims the trial court erred by: denying his motion for mistrial based upon comments made by the prosecution in closing argument; overruling his continuing objection to hearsay testimony

1

presented by the state; and failing to grant his motion to dismiss the indictment, motion for directed verdict and JNOV. Wright also claims that reversal is warranted due to cumulative errors committed by the state at trial. Finding no error, we affirm.

**FACTS**

¶2. Ann Pope[1], a 20-year-old woman, lived alone in a duplex in Lauderdale County. On May 29, 2004, she called Wright, the maintenance repairman, and requested that a window unit be installed. She and Wright were acquaintances and he had been over to her apartment several times in a social capacity. However, they had never been sexually involved. He installed the air conditioner, then made sexual advances which Pope rejected. Later that night she awoke to the sound of someone calling her name, and saw that Wright had entered her apartment, although she had previously locked the doors. With his pants down, he placed something[2] against her neck, commanded her to remove her clothes, and raped her. Afterward Pope asked how he got in, and Wright told her she needed to lock her kitchen window.

¶3. After Wright left, Pope called Darryl Hampton, a family friend, to come and get her, and when he arrived, he noticed that the kitchen window was open and saw a tear in the screen. Pope was taken to the hospital where a rape kit test was performed. A few days later,

---

[1] As is customary, we use a fictitious name to protect the identity of the minor victim.

[2] According to Pope's testimony, she could not tell whether the object was Wright's hand or a knife. Following his instructions, she proceeded to undress herself, and the rape occurred.

2

Detective James Hall went to the apartment to survey the crime scene, where he confirmed that the kitchen window screen had been slashed.

¶4.    In the trial court proceeding, the parties stipulated that Wright's semen was identified from the victim's medical examination. The state presented three witnesses: the victim, Hampton, and Hall. Hampton admitted that he did not have any first-hand knowledge of the incident itself except for the condition of the window screen. Defense counsel repeatedly objected to his testimony regarding the rape, contending that anything the victim told Hampton was hearsay.[3] At the conclusion of the state's case, the defense moved for a directed verdict or dismissal, but the trial court denied both.

¶5.    During closing argument, Wright timely objected to two comments made by the state regarding Wright's defense. He argued that these statements violated his Fifth and Fourteenth Amendment rights, and moved for a mistrial, which was denied. The jury found Wright guilty on both counts, and sentenced him to two consecutive twenty-five year sentences. His motion for JNOV was also denied.

**ANALYSIS**

**I. Failure to grant a mistrial**

¶6.    Whether to grant a mistrial is within the sound discretion of the trial court. *Shelton v. State*, 853 So. 2d 1171, 1183 (Miss. 2003). The standard of review for denial of a motion for mistrial is abuse of discretion. *Pulphus v. State*, 782 So. 2d 1220, 1222 (Miss. 2001).

---

[3]These objections will be examined further under Issue II. The first objection was sustained, the others overruled.

¶7. A criminal defendant has the right to elect not to take the witness stand in his own defense. Miss. Const., art. XXVI; U.S. Const. amend. V. Balanced against this constitutional interest is the rule that attorneys are to be given wide latitude in making their closing arguments. In *Jimpson v. State*, 532 So. 2d 985, 991 (Miss. 1988) we wrote that " although a direct reference to the defendant's failure to testify is strictly prohibited, all other statements must necessarily be looked at on a case by case basis." We also said that "[t]here is a difference, however, between a comment on the defendant's failure to testify and a comment on the failure to put on a successful *defense*. *Id.* (emphasis in original). The state is entitled to comment on the lack of *any* defense, and such comment will not be construed as a reference to the defendant's failure to testify by innuendo and insinuation. *Shook v. State*, 552 So. 2d 841, 851 (Miss. 1989) (emphasis added). The question is whether the prosecutor's statement can be construed as commenting upon the failure of the defendant to take the stand. *Ladner v. State*, 584 So. 2d 743, 754 (Miss. 1991).

¶8. Today we clarify the holdings in our prior cases. What is prohibited is any reference to the defendant's failure to testify implying that such failure is improper, or that it indicates the defendant's guilt. Prosecutors must always choose their words very carefully in this crucial aspect of the trial.

¶9. Wright contends that, in two instances during closing argument, the state improperly commented on his failure to take the stand in violation of his Fifth Amendment rights. He made timely objections and moved for a mistrial in each instance, but his motions were denied. The state argues that the prosecutor was merely addressing the defendant's failure

4

to present any case at all, and that such comments are permissible.

**A. Statement I.**

¶10. As a prefatory matter, it is critical to focus on the fact that the initial comments which Wright finds objectionable concerned a jury instruction given by the trial court. Instruction C7, which was given without objection, stated: "The court instructs the Jury that you must not consider the fact that the defendant did not testify as evidence against him and no inference of any kind may be drawn from the fact that the defendant did not testify in this case." In fact, defense counsel had pre-filed Instruction No. D-5, which stated: "At no time under [sic] laws of the United States must a person charged with a crime prove his innocence or testify. If a person chooses not to testify, you the Jury, are not permitted to draw any inference of guilt and this fact should not influence your verdict in any matter what so ever [sic]." During the jury instruction conference, in considering the proposed defense instructions, defense counsel stated that he was withdrawing defendant's Instruction No. D-5 because "it is essentially the same" as the trial court's Jury Instruction No. C-7, which was by that time already given.

¶11. As the prosecutor stood to address the jury in closing arguments, significant critical evidence was before the jury. During cross-examination of Detective Hall, it was obvious that defense counsel was attempting to set up (at least inferentially) the defense of consensual sex between the victim and Wright. Likewise, the victim testified that she knew Wright because he had been at her apartment "at parties." The victim testified that whenever she had maintenance problems her landlord would send Wright to perform the maintenance. On the

5

day of the rape (which occurred later that night), Wright had been at the victim's apartment to put in an air conditioner. During this time, as he had done in the past, he made sexual comments and innuendos to the victim, which she rebuffed. During the cross-examination of the victim, defense counsel asked the victim about parties at her apartment, attended by Wright and others, where drugs were used. Defense counsel also questioned the victim about a third person (a man) being at her apartment earlier in the day when Wright came to perform his maintenance work, referring to this other man as "your boyfriend." Defense counsel asked the victim if a fight ensued between her and "her boyfriend" because of Wright's presence. The victim denied that this other man was her boyfriend, or that there was any argument for any reason between them on that day.

¶12. With this backdrop, when the prosecutor was addressing the jury during the opening phase of the State's closing arguments, she stated, inter alia:

> I don't know if all of you ever rented before, but you deal with your landlord or you deal with someone that they employ. You don't really get your choice of maintenance people to come over and do the work. But she had a working relationship with [Wright], as she knew him, because he had done things in there before. And in fact, she even called, I think, his nephew or something, to get in touch with him to come and do that. He came that day to help her. And she told you that as he had done in the past, he made some flirty advances, whatever you want to call it. Some kind of feeling her out to see if she might be interested in a way. And she dealt with it the same way she dealt with it in the past. Maybe it was the right way; maybe it was the wrong way. But she kind of laughed it off saying: You know, we don't have anything to do with each other. You know, ha, ha, ha. You know, I am not interested in you.
>
> But a nice way but [sic] to let him know that she was not interested in him in that way.
>
> Now, there has been talk about [defense counsel] asking questions about her

6

having a boyfriend there. She said that wasn't her boyfriend; she didn't have a boyfriend. And him being jealous of the defendant in some way. Ladies and gentlemen, again, that is not evidence. He could ask a question whether Santa Claus was at her house that day. That doesn't mean that Santa Claus was there that day. It's important that you know that the defendant has the right to testify or not testify. That's one of the jury instructions you will have. And he has the right not to testify. But he also has the right to call any witnesses that he wants to call in his case. Now there was no –

At this point, defense counsel objected, but not on the basis of the prosecutor's comment on the defendant's failure to testify. Instead, defense counsel objected and stated that "the jury instructions says [sic] he does not have to prove anything." The following then occurred between the trial court and counsel:

BY THE COURT: That's correct, he doesn't have to prove anything.

BY [DEFENSE COUNSEL]: Your Honor –

BY [PROSECUTOR]: But he has the right to call witnesses is my statement, if he so chooses.

BY [DEFENSE COUNSEL]: Your Honor, we would move for a mistrial.

BY THE COURT: All right. I will deny the motion for a mistrial. The defendant doesn't have to do anything. The burden of proof is on the State.

BY [PROSECUTOR]: The burden of proof –

BY THE COURT: That's what all the instructions say.

BY [PROSECUTOR]: That's correct. The burden of proof is on the State. There are witnesses that are equally available. Anybody with subpoena power are [sic] available to all.

The prosecutor then continued her closing argument, stating: "Now the only testimony about a boyfriend, the only testimony about some kind of jealousy came from [defense counsel].

7

That's the only place you heard it, ladies and gentlemen."

¶13. As noted above, defense counsel did not object on the basis of the prosecutor's alleged improper comment on the defendant's failure to testify, but on the basis that the prosecutor's comment was contrary to the trial court's instructions stating that the defendant was not required to "prove anything." Other jury instructions had been given by the trial judge, read by the trial judge to the jury prior to the commencement of closing arguments, and taken by the jury to the jury room for use during the jury's deliberations. Instruction No. C-1 stated, inter alia, that the jury was "not to single out one instruction alone as stating the law, but you must consider these instructions as a whole." Instruction No. C-1 also stated that "[a]rguments, statements and remarks of counsel are intended to help you understand the evidence and apply the law, but are not evidence. If any argument, statement or remark has no basis in the evidence, then you should disregard that argument, statement or remark."

¶14. This Court has repeatedly held that attorneys on both sides are allowed wide latitude in their closing arguments and that there is an obvious difference between a comment on the defendant's failure to testify and a comment on defendant's failure to put on a credible defense. *Underwood v. State*, 919 So. 2d 931, 939-40 (Miss. 2005) (citing *Howell v. State*, 860 So. 2d 704, 751-52 (Miss. 2003)). The comment by the prosecutor in the present case was not error, but instead was appropriate, based on the status of the record at the time the comments were made in closing arguments.

¶15. Wright argues that the prosecutor's comment bears a strong resemblance to that in *Livingston v. State*, 525 So. 2d 1300 (Miss. 1988), in which the prosecution said:

8

"Now, the Court tells you--you are not to take into consideration the fact that the defendant did not testify. That's in an instruction right here. And we don't want you to."

*Id*. at 1305.

¶16. Although Wright is correct about the resemblance, his reliance on *Livingston* is misplaced.

¶17. A careful reading of *Livingston* leads this Court to conclude that it was decided in large part on a statute which no longer exists. The *Livingston* Court was deeply divided (5-4) concerning this issue, with the majority reasoning:

> It is the duty of the presiding judge, as well as trial attorneys on both sides, in the conduct of a criminal case to see that the constitutional rights of an accused are not violated. A defendant has a constitutional right not to take the witness stand. *See*: Mississippi Constitution, Article XXVI; U.S. Constitution, Amendment V; *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965); *Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964). *This right becomes meaningless if comment or insinuation can be made reflecting upon his failure to testify. Indeed, for over a century, there has been a statute in effect in this state which provides:*
>
>> §13-1-9. Competency of an accused.
>> The accused shall be a competent witness for himself in any prosecution for crime against him. The failure of the accused, in any case, to testify shall not however operate to his prejudice or be commented on by counsel.

(Emphasis added).

¶18. The *Livingston* court went on to state that "[f]or nearly a century we have recognized [the defendant's right not to take the witness stand] and have held that any comment by a prosecutor regarding the defendant's failure to testify was incurable, reversible error." *Id.* at 1308. At this point, it cited twenty-one cases, ranging in dates from 1893 to 1986. A

9

careful reading of each of them reveals that all but three of them directly relied upon § 13-1-9 or its predecessors. The three which did not simply made general reference to the repeated decisions of this Court so holding.

¶19. In 1991, some three years after the decision in *Livingston*, the Legislature repealed Miss. Code Ann. § 13-1-9. By this time, legislative action in repealing numerous procedural and evidentiary statutes had become commonplace in response to this Court's judicial enactment of, inter alia, the Mississippi Rules of Civil Procedure (eff. January 1, 1982), and the Mississippi Rules of Evidence (eff. January 1, 1986), thus representing the Legislature's recognition of the inherent power and authority of this Court to enact rules governing our state judiciary. See *Newell v. State*, 308 So. 2d 71 (Miss. 1975).

¶20. In addition, *Livingston* also cited the United States Supreme Court's decision in *Griffin v. California*, 380 U.S. 609, 85 S. Ct. 1229, 14 L .Ed. 2d 106  (1965); however, this Court failed to acknowledge the United States Supreme Court's freshly-decided case of *United States v. Robinson*, 485 U.S. 25, 108 S. Ct. 864, 99 L. Ed. 2d 23 (1988), which clarified its decision in *Griffin*. *Robinson* was decided a little more than two months before this Court decided *Livingston*. In *Robinson*, the Supreme Court was confronted with a situation where the defense counsel, in closing arguments, constantly referred to the government's persistent failure to allow the defendant (who did not testify) to explain "his actions" and "his side of the story." Not surprisingly, the government requested the opportunity to rebut the defense counsel's comments, which request the trial judge granted, whereupon, the government prosecutor, in the final phase of closing arguments, informed the

10

jury that the defendant "could have taken the stand and explained it to you, anything he wanted to." ***Robinson***, 485 U.S. at 27-28. The Supreme Court addressed this issue in pertinent part as follows:

> We hold that the prosecutor's statement that respondent could have explained to the jury his story did not in the light of the comments by defense counsel infringe upon respondent's Fifth Amendment rights. The Court of Appeals and respondent apparently take the view that any "direct" reference by the prosecutor to the failure of the defendant to testify violates the Fifth Amendment as construed in ***Griffin***. *We decline to give **Griffin** such a broad reading, because we think such a reading would be quite inconsistent with the Fifth Amendment, which protects against compulsory self-incrimination.* The ***Griffin*** court addressed prosecutorial comment which baldly stated to the jury that the defendant must have known what the disputed facts were, but that he had refused to take the stand to deny or explain them. We think there is considerable difference for purposes of the privilege against compulsory self-incrimination between the sort of comments involved in ***Griffin*** and the comments involved in this case.
>
> . . . .
>
> "Under ***Griffin*** . . . it is improper for either the court or the prosecutor to ask the jury to draw an adverse inference from a defendant's silence. But I do not believe the protective shield of the Fifth Amendment should be converted into a sword that cuts back on the area of legitimate comment by the prosecutor on the weaknesses in the defense case." ***United States v. Hasting***, 461 U.S. 499, 515 (1983) (STEVENS, J., concurring) (citation omitted).
>
> . . . .
>
> "[The] central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, ***United States v. Nobles***, 422 U.S. 225 (1975). . . ." ***Delaware v. Van Arsdall***, 475 U.S. 673, 681 (1986). To this end it is important that both the defendant and the prosecutor have the opportunity to meet fairly the evidence and arguments of one another. The broad dicta in ***Griffin*** to the effect that the Fifth Amendment "forbids . . . comment by the prosecution on the accused's silence," 380 U.S., at 615, must be taken in the light of the facts of that case. It is one thing to hold, as we did in ***Griffin***, that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would forbid the prosecutor from fairly

11

responding to an argument of the defendant by adverting to that silence. There may be some "cost" to the defendant in having remained silent in each situation, but we decline to expand *Griffin* to preclude a fair response by the prosecutor in situations such as the present one.

*Robinson*, 485 U.S. at 31-34.

¶21. Thus, *Livingston* and its progeny are overruled to the extent that they are inconsistent with this opinion because: (1) the reversal of Livingston's conviction was based in large part on an evidentiary statute which has since been repealed; and, (2) this Court in *Livingston* erroneously interpreted the U. S. Supreme Court's decision in *Griffin*, as clarified by *Robinson,* which this Court failed to acknowledge in *Livingston*.

¶22. In the present case, defense counsel did not object on the basis of the prosecutor's alleged improper comment on the defendant's failure to testify, but rather objected on the basis that the prosecutor's comment was contrary to the trial court's instructions stating that the defendant was not required to "prove anything."  The prosecutor in the present case in no way, either directly or inferentially, put a negative spin on the fact that the defendant exercised his constitutional right not to testify.  Thus, consistent with the U. S. Supreme Court's decision in *Robinson*, no error was committed by the prosecutor in her closing arguments to the jury.

**B.  Statement II.**

¶23. The second statement challenged by Wright occurred during rebuttal of closing argument.  There, the comment was: "I guess what [the defense attorney] was arguing now is that it was consensual. I have not heard any evidence, ladies and gentlemen, in the two

12

days we have been here, that they had consensual sex. So there was something to hide–. . .
.” Wright's timely objection was again overruled and his subsequent motion for mistrial was denied.

¶24.    When the statement is not an outright violation, this Court will review the facts on a case-by-case basis. ***Logan v. State***, 773 So. 2d 338, 348 (Miss. 2000).  As discussed supra, not every comment regarding the lack of any defense is automatically deemed to point toward the defense's failure to testify. ***Jimpson v. State***, 532 So. 2d 985, at 991 (Miss. 1988). Attorneys are to be given wide latitude in making their closing arguments. ***Id.*** (citing ***Johnson v. State***, 477 So. 2d 196, 209 (Miss. 1985)). The state's position is that both statements merely addressed Wright's failure to present any defense at all, and thus were a permissible argument.  In support of this contention, the state cites ***Jimpson***, in which the prosecutor commented on the fact that the defendant failed to show a lawful reason for being in the area where the crime occurred, saying:

> "A mile from the bank at exactly the time the woman got shot when he said he lived out in north Jackson and didn't even know Jackson. Didn't even know the streets, except he had some folks out on Bailey Avenue and where he was arrested? Bailey Avenue. Now what was he doing down there? They[4] haven't even bothered to tell you that." ***Id.***

Finding the lack of a successful defense to be a proper topic for closing argument, this Court opined that "it is proper for the District Attorney to question the defense's inability to

---

[4]The word "they," as used by the prosecutor in ***Jimpson***, was carefully analyzed by the Court. It was found to refer to the two defense attorneys representing the accused, not Jimpson himself.

successfully explain Jimpson's presence in the area." *Id.* Such a comment was not addressing, or even alluding to, the defendant's failure to testify. *Id.* This reasoning would similarly apply to the statement in the present case. The state was simply pointing out that the defense's position, i.e., that Pope agreed to have sex with Wright, was unsupported by the evidence. Under our current precedence, this does not amount to a Fifth Amendment violation. *See Cox v. State,* 849 So. 2d 1257, 1270 (Miss. 2003); Wright's argument is without merit, and the trial court's denial of his motion for mistrial is affirmed.

## II. Wright's continuing objection to hearsay testimony

¶25. Hearsay is defined as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. M.R.E. 801(c)(2005). If the significance of a statement is merely that it was made and there is no issue about the truth of the matter asserted, then the statement is not hearsay. *Tanner v. State*, 764 So. 2d 385, 406 (Miss. 2000)(citing *Mickel v. State*, 602 So. 2d 1160, 1162 (Miss. 1992)). Wright asserts that the trial court erred by improperly admitting hearsay evidence during the testimony of Darryl Hampton. Wright's first objection was to Hampton's statement regarding the telephone call he received from Pope immediately after the rape:

> Q: What was the tone of her voice when she called you?
> A: She was upset when she called me. And, basically, she was like, "Would you please come and pick me up right now and take me to my mother's house?"

Although the trial court sustained this objection, subsequently in Hampton's testimony, he

14

was asked:

> Q: Okay. And just to show your feelings about this, did you do anything before you left or did you immediately go get in your car and leave?
> A: I mean, I was at home when she called. And like I spoke earlier, she sounded upset and she said, "I need you to come here immediately."

The trial court overruled Wright's objection to this comment. The point of this testimony was merely to show why Hampton was at Pope's home. Hampton's statement was not intended to prove the truth of the matter asserted, thus it was not hearsay and was admissible. Wright further objected to Hampton's recitation of his conversation with Pope regarding the rape. Noting that Pope had already testified and been cross-examined by Wright, the trial court overruled the objection. *See* M.R.E.801(d)(1).

¶26. In addition, Rule 803(1) of the Mississippi Rules of Evidence provides that a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter is not excluded by the hearsay rule. The comment to 803(1) states that "spontaneity is the essential ingredient." This court has explained that the question of spontaneity is to be decided upon the facts and circumstances of each individual case and such a determination is a question for the trial court. *Evans v. State*, 547 So. 2d 38, 41 (Miss. 1989). When such statements are admitted, the action of the trial court should not be reversed unless the comment could not, under a reasonable interpretation of the facts presented, be spontaneous. *Id.* Also, M.R.E. 803 (3), which provides that a statement of the declarant's then existing state of mind, emotion, sensation, or physical condition is not excluded by the hearsay rule, is applicable. Here, the prosecution

15

had established through Hampton's testimony that Pope was "upset" and "crying" when she made the statements, and that he had arrived between 30 and 35 minutes from the time the rape occurred. The testimony was admissible under M.R.E. 803(1) and (3), and this issue is without merit.

### III. Denial of Wright's motion to dismiss, motion for directed verdict, and motion for JNOV

¶27. Motions to dismiss, motions for JNOV, and motions for directed verdict all challenge the legal sufficiency of the evidence. *Hawthorne v. State*, 835 So. 2d 14, 21 (Miss. 2003). When reviewing the sufficiency of the evidence, this Court must ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005).

¶28. Wright was convicted for burglary of a dwelling with intent to commit rape therein and for rape. In its case in chief, the state presented the testimony of Ann Pope, Darryl Hampton, and Detective Hall. Wright chose not to put on a defense.

### A. Count I: Burglary with intent to commit rape

¶29. Wright was charged with burglary of a dwelling under Miss. Code Ann. § 97-17-23 (Rev. 2006). Burglary is the crime of breaking into the dwelling house of another with the intent to commit a felony therein; in this case, the felony was the rape of Pope. The victim testified that she had locked the door before going to sleep, and that no one had permission to be in her house. She said that when she asked Wright how he had gotten inside, he had

16

told her she "might want to lock [her] kitchen window." Additionally, the prosecution called Hampton and Hall who both testified to seeing the torn kitchen window screen after the incident took place.

¶30.    Pope also testified that Wright had made unsuccessful passes at her before, but that she had "laughed off" his advances. She stated that, on the night of the incident in question, she awoke to someone calling her name and then saw Wright beside her bed. After the rape was over, Pope testified that Wright had said: "I know I just raped you and I know the consequences I have to pay, but you shouldn't have been playing with me like this."

¶31.    Wright contends that the state has failed to meet its burden in establishing the elements of burglary. To prove his argument, he brings forth two points: first, that Detective Hall did not physically produce the window screen as evidence and second, that Pope stated she was not completely sure how Wright got into her home. While these facts are true, they do not preclude a reasonable guilty verdict.

¶32.    This Court has consistently held that with regard to the sufficiency of the evidence, a reversal is warranted only when evidence of one or more elements of an offense is such that reasonable and fair-minded jurors could only find the accused not guilty. *Wilson v. State*, 936 So. 2d 357, 363 (Miss. 2006)(citing *Hawthorne*, 835 So. 2d at 21). Hall testified to the condition of the window screen, and this testimony was consistent with that given by Hampton and Pope. The victim stated that Wright told her he entered the apartment through the kitchen window, and this was also consistent with the testimony of the other two

17

witnesses, both of whom said the kitchen window was either open or tampered with.[5] Pope

further testified that Wright had tried to touch her earlier that day, had made unsuccessful

sexual advances on prior occasions, and when she awoke he was standing by her bed. Based

upon this evidence, a rational juror could have found the elements of the crime were

established beyond a reasonable doubt, therefore, the trial court did not err in denying

Wright's motion to dismiss the indictment, motion for directed verdict, and motion for JNOV.

### B. Count II: Rape

¶33. Wright next challenges his conviction under Miss. Code Ann. § 97-3-65(4) (Rev.

2006). The indictment charged him under subsection three, which is the statutory rape

segment, although the victim was twenty years of age when the incident occurred. He

contends that the state should not have been allowed thereafter to prosecute him under

subsection four, dealing with forcible intercourse.

¶34. An indictment "shall be a plain, concise and definite written statement of the essential

facts constituting the offense charged and shall fully notify the defendant of the nature and

cause of the accusation. Formal and technical words are not necessary in an indictment, if

the offense can be substantially described without them." Uniform Rules of Circuit and

County Court Practice Rule 7.06 (2006). Although a typographical error existed concerning

the subsection number, the substance of the indictment read that Wright was charged with

---

[5] Hampton and Pope both testified that the kitchen window was open at the time they left the building. At some point after this time, it had been shut. Pope also testified that she believed Wright had come back to close the window.

forcible rape. Specifically, it read that Wright "did willfully, unlawfully, feloniously and knowingly have forcible sexual intercourse with [Ann Pope]." This was sufficient to provide notice of the crime charged.

¶35. Wright unpersuasively asserts that there was insufficient evidence to convict him for rape. He cites Mississippi Code Annotated § 97-3-69 for the proposition that, in a rape case, the testimony of the victim alone is not enough to support a conviction. The statute reads that "[i]n the trial of all cases *under the last preceding section*, it shall be presumed that the female was previously of chaste character, and the burden shall be upon the defendant to show that she was not; but no person shall be convicted upon the uncorroborated testimony of the injured female." Miss. Code Ann. § 97-3-69 (Rev. 2006)(emphasis added). The "last preceding section" deals with the statutory rape of a female between the ages of 12 and 18. It does not, and has never, applied to forcible rape. *See McLaurin v. State*, 129 Miss. 362, 364-65 (Miss. 1922). As noted above, Wright was sufficiently charged with forcible rape to be convicted for such a crime; the subsection for statutory rape appeared merely as the result of a typographical error.

¶36. To further the validity of Wright's conviction, Pope's testimony was not the only evidence the prosecution presented in this case. Detectives Hall and Hampton both corroborated her story with additional testimony regarding her condition immediately after the incident; there was also evidence stipulated by the parties regarding Wright's semen being found in Pope's body. Thus, there was sufficient evidence for a reasonable jury to find Wright guilty of rape.

19

### IV. Cumulative Error

¶37. As all of the foregoing assignments of error have been found to be without merit, we find there is no cumulative error. *Branch v. State*, 882 So. 2d 36, 58 (Miss. 2004). Wright's argument that reversal is warranted on the basis of cumulative error is also without merit.

### CONCLUSION

¶38. The Lauderdale County Circuit Court did not err in its rulings on the issues raised by Willie Joe Wright, and we affirm his conviction and sentence.

¶39. **COUNT 1: CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE (25) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AND PAYMENT OF AN APPEARANCE BOND FEE OF $100.00 AND COURT COSTS IN THE AMOUNT OF $268.50, AFFIRMED. COUNT 11: CONVICTION OF RAPE AND SENTENCE OF TWENTY-FIVE (25) YEARS, AS A HABITUAL OFFENDER, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AND PAYMENT OF AN APPEARANCE BOND FEE OF $300.00, AFFIRMED. SENTENCES IN COUNT I AND II SHALL RUN CONSECUTIVELY.**

**SMITH, C.J., WALLER, P.J. EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., DISSENTS WITH WRITTEN SEPARATE OPINION JOINED BY GRAVES, J.**

**DIAZ, JUSTICE, DISSENTING:**

¶40. Because the majority overrules controlling case law, resulting in what has long been recognized as a violation of a fundamental constitutional right against self-incrimination, I must dissent.

¶41. I find several fatal errors in the majority's reasoning for overturning *Livingston v. State*, 525 So. 2d 1300 (Miss. 1988). First, the fact that *Livingston v. State*, 525 So. 2d 1300

20

(Miss. 1988) relies partly on a repealed statute simply does not cure the violation of a defendant's *fundamental constitutional right* against self-incrimination as protected by the Fifth Amendment to the United States Constitution and Art. 3 § 26 of the Mississippi Constitution. As **Livingston** reiterated, this "elementary and long established principle of law" has been recognized for more than a century and "*any* comment by a prosecutor regarding the defendant's failure to testify was incurable, reversible error." **Id.** at 1307-08.

¶42.    Second, the United States Supreme Court's decision in **United States v. Robinson**, 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988), does not change its previous decision in **Griffin v. California**, 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965). **Robinson** involved defense counsel's repeated insistence that the government was preventing the defendant from testifying. 485 U.S. at 32. As stated by the Court, "there is considerable difference for purposes of the privilege against compulsory self-incrimination between the sort of comments involved in **Griffin** and the comments involved in this case." **Id.**

¶43.    Third, case law does not distinguish cases where the prosecutor's comment does not contain a "negative spin." This does not save the prosecution's statement. In the case of **Whigham v. State**, 611 So. 2d 988, 996 (Miss. 1992), this Court granted a mistrial for comments made by the state on several occasions throughout the course of the proceeding that their witnesses statements were "unopposed," "unimpeached," and "unrebutted." Not only did the Court hold that a violation had occurred, but it felt that this was a wrong so "egregious" that it could overcome the procedural bar of defense counsel's failure to contemporaneously object. **Id.** Addressing the boundaries of this rule, this Court found that:

21

"Courts in this nation have also consistently held that the Fifth Amendment right not to be compelled to be a witness against oneself, incorporated as well in Art. 3 § 26 of the Mississippi Constitution, includes the right not to have the prosecution make *any comment* upon a defendant's exercise of that right." *Id.* at 995 (emphasis supplied).

¶44. Prohibited conduct by a prosecutor was also exemplified in the case of *Wilson v. State*. 433 So. 2d 1142 (Miss. 1983), where the prosecutor asked the jury during closing arguments: "[W]hat about the things Mr. Vollor didn't do. Where was the explanation as to where the TV and radio came from." *Id.* at 1145. In finding a violation of the defendant's Fifth Amendment right, this Court stated that: "District attorneys must not directly, or by innuendo and insinuation, comment on a defendant's not testifying." *Id*. at 1146.

¶45. By condoning the practice of the prosecutor in this case, we encourage all prosecutors to now draw the jury's attention (with any tone and emphasis he or she chooses) to the fact that the defendant did not testify by simply referring to a jury instruction similar to C-7. Such an instruction is likely to be presented by the court in any case where the defendant does not take the stand. There is no case law which holds that a prosecutor's comment on a defendant's failure to testify via the use of a jury instruction in closing argument is appropriate. Indeed, our precedent holds the opposite. *See Livingston* 525 So. 2d at 1305.

¶46. The better approach would be for the Court to properly analyze Wright's Fifth Amendment claim, but do so under harmless-error analysis. The United States Supreme Court has held that harmless-error analysis applies to violations of the prohibition of *Griffin*. *Chapman v. California*, 386 U.S. 18, 22, 17 L.Ed. 2d 705, 709, 87 S. Ct. 824, 827 (1967).

22

As the Court stated in *Chapman*, "We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." *Id.* Accordingly, I would hold that the *Griffin* violation which occurred in this case constituted harmless error regarding Wright's Fifth Amendment right against self-incrimination.

¶47.    However, I find that the protections afforded in the Mississippi Constitution Art. 3 § 26 go beyond the federal Fifth Amendment right. While *Livingston* and more than a century of previous cases relied on a repealed statute and the United States Constitution, they also applied our state's constitutional right against self-incrimination. *See Bridgeforth v. State*, 498 So. 2d 796 (Miss. 1986); *Simpson v. State*, 497 So. 2d 424 (Miss. 1986); *West v. State*, 485 So. 2d 681 (Miss. 1985); Jackson v. State, 440 So. 2d 307 (Miss. 1983); *Wilson v. State*, 433 So. 2d 1142 (Miss. 1983); *Peterson v. State*, 357 So. 2d 113 (Miss. 1978); *Hines v. State*, 339 So. 2d 56 (Miss. 1976); *Clark v. State*, 260 So. 2d 445 (Miss. 1972); *Chatman v. State*, 244 Miss. 659, 145 So. 2d 707 (1962); *Lambert v. State*, 199 Miss. 790, 25 So. 2d 477 (1946); *Winchester v. State*, 163 Miss. 462, 142 So. 454 (1932); *Guest v. State*, 158 Miss. 588, 130 So. 908 (1930); *Harwell v. State*, 129 Miss. 858, 93 So. 366 (1922); *Gurley v. State*, 101 Miss. 190, 57 So. 565 (1912); *Harris v. State*, 96 Miss. 379, 50 So. 626 (1909); *Prince v. State*, 93 Miss. 263, 46 So. 537 (1908); *Smith v. State*, 87 Miss. 627, 40 So. 229 (1906); *Hoff v. State*, 83 Miss. 488, 35 So. 950 (1903); *Sanders v. State*, 73 Miss. 444, 18 So. 541

(1895); *Reddick v. State*, 72 Miss. 1008, 16 So. 490 (1895)**;** *Yarbrough v. State*, 70 Miss. 593, 12 So. 551 (1893)*.*  As such, I find that *Livingston*'s analysis still applies here and that Wright's conviction should be reversed.

¶48.    In the present case, the prosecution's statement directly referenced Wright's right not to testify, an act that is in and of itself prohibited by prior case law interpreting the Mississippi Constitution.  Accordingly, I would reverse the trial court's denial of Wright's motion for mistrial.

    **GRAVES, J., JOINS THIS OPINION.**