IRVING, J.,
 

 for the Court.
 

 ¶ 1. Rhonda Renea Simmons was convicted by the Tippah County Circuit Court of the sale of cocaine. She was sentenced to twenty-five years in the custody of the Mississippi Department of Corrections, with five years suspended, and five years of post-release supervision. Aggrieved, Simmons appeals and asserts: (1) that the trial court erred in denying her motion for a change of venue, (2) that the trial court erred in allowing the trial to proceed even though no African Americans were on the jury,
 
 [1]
 
 and (3) that the trial court erred in denying her motion to dismiss.
 

 ¶ 2. Finding no reversible error, we affirm Simmons’s conviction and sentence.
 

 FACTS
 

 ¶ 3. On March 21, 2006, Simmons sold cocaine to Ronnie Rowland who, unbeknownst to her, was working as a confidential informant for the Tippah County Sheriffs Department.
 
 [2]
 
 Rowland had known
 
 *846
 
 Simmons for several years. Immediately prior to making the buy, Rowland met with Christopher McCallister, a narcotics investigator with the Tippah County Sheriffs Department, at a church parking lot near Simmons’s home. There, Rowland was equipped with video and audio recording devices and issued a $100 bill. Rowland then walked to Simmons’s home. According to Rowland, Simmons gave him five “pieces” of crack cocaine in exchange for the $100 bill. Rowland stated that Simmons told him that she had had a “good day” because she had sold “a bill,” or $100 worth of cocaine, to three other people that day.
 

 ¶ 4. Rowland then returned to the parking lot and gave the crack cocaine to Investigator McCallister. It was then packaged, labeled, and placed in a safe at the Tippah County Sheriffs Department before being sent to the Mississippi Crime Laboratory in Jackson, Mississippi, where it was determined to be cocaine.
 

 ¶ 5. Simmons filed a motion for change of venue, a motion to suppress the videotape of the buy, and a motion to dismiss. The Tippah County Circuit Court held a hearing on the motions on November 13, 2007, and denied all of them. Simmons proceeded to trial, and the jury convicted her, leading to this appeal.
 

 ¶ 6. We find no reversible error; therefore, we affirm.
 

 ANALYSIS AND DISCUSSION OF THE ISSUES
 

 1. Motion for a Change of Venue
 

 ¶ 7. In her first issue, Simmons contends that the trial court erred in denying her motion for a change of venue. The law is clear in this State that “[t]he decision to grant [a] venue change is in the sound discretion of the trial judge.”
 
 Gray v. State,
 
 799 So.2d 53, 62(¶ 32) (Miss.2001) (citing
 
 Hoops v. State,
 
 681 So.2d 521, 526 (Miss.1996)). Thus, an appellate court “will not disturb the ruling of the [trial] court where the sound discretion of the trial judge in denying change of venue was not abused.”
 
 Id.
 
 (quoting
 
 Harris v. State,
 
 537 So.2d 1325, 1328 (Miss.1989)).
 

 ¶ 8. In her motion, Simmons argued that she could not receive a fair trial in Tippah County because “news of this incident has been widespread throughout this small county” and because jurors may be prone to convict even in the face of weak evidence. She attached to her motion the affidavits of four residents of Tip-pah County who all stated that, based on what they had “seen, heard, and observed” since Simmons’s arrest, they did not believe that Simmons could receive a fair trial in Tippah County. We note at the outset that Simmons failed to swear to her motion, as required by Mississippi Code Annotated section 99-15-35 (Rev.2007), which provides:
 

 On satisfactory showing, in writing,
 
 sworn to by the prisoner,
 
 made to the court, or to the judge thereof in vacation, supported by the affidavits of two or more credible persons, that, by reason of prejudgment of the case, or grudge or ill will in the county where the offense is charged to have been committed, the circuit court, or the judge thereof in vacation, may change the venue in any criminal case to a convenient county, upon such terms, as to the costs in the case, as may be proper.
 

 (Emphasis added). Nevertheless, we briefly address this issue.
 

 
 *847
 
 ¶ 9. During the hearing on Simmons’s motion, the State called two Tippah County Supervisors, Dennis Grisham and Jimmy Gunn, as well as Tippah County tax collector, Joe Larry Shackelford. All testified: (1) that they did not know Simmons, (2) that they had not heard any publicity surrounding Simmons’s case, and (3) that they knew of no reason why Simmons could not receive a fair trial in Tip-pah County. Thereafter, the trial judge denied Simmons’s motion for a change of venue, and her case proceeded to trial.
 

 ¶ 10. In her brief, Simmons relies on
 
 Hickson v. State,
 
 707 So.2d 536 (Miss.1997) to support her position that the trial judge erred in fading to grant her motion. In
 
 Hickson,
 
 our supreme court held:
 

 Where a defendant presents the court with an application for change of venue accompanied by two affidavits which affirm the defendant’s inability to receive a fair trial in a particular location, a presumption is created that it is impossible for a fair trial to be had in that place. This presumption may be rebutted if the State proves from voir dire that the trial court impaneled an impartial jury. If the State makes such a showing of impartiality, this Court defers to the trial court’s denial of the change of venue request, even in the face of adverse publicity, for the venue decision is, after all, within the discretion of the lower court.
 

 Hickson,
 
 707 So.2d at 541-42(¶ 22) (citations omitted).
 

 ¶ 11. During voir dire, the trial judge addressed Simmons’s concerns that she could not receive a fair trial as follows:
 

 BY THE COURT: Now, Ms. Simmons is charged with selling cocaine. Simply because of the nature of the charge, is there any reason that you could not be fair and impartial to her? Some people have had trouble in their families and problems in their families because of that, and is there any reason that you could not give her a fair and impartial trial?
 

 [[Image here]]
 

 BY THE COURT: Now, Ms. Simmons is an African-American. That must not, cannot enter into your decision-making process. She’s represented by Mr. Randolph Walker who is an African-American. That cannot, must not enter into your decision-making process. What you will base your opinion upon and your verdict, if one is reached, upon is the testimony of the witnesses that come from the witness stand and the evidence that’s introduced. Is there any reason because of Ms. Simmons’s race that it would make it more difficult or would make it easier for you to find her- guilty or not guilty? Would it weigh on your mind one way or the other?
 

 None of the venire persons indicated to the trial judge that they would have difficulty in granting Simmons a fair trial. A jury was impaneled shortly thereafter.
 

 ¶ 12. We defer to the trial judge’s decision to deny Simmons’s motion, as we find, based on the questions asked by the trial judge and the lack of any affirmative responses thereto, that an impartial jury was impaneled. There is no merit to this contention of error.
 

 2. Jury Selection
 

 ¶ 13. Following jury selection, Simmons’s trial attorney filed a motion to quash the jury panel, arguing that no African Americans were selected to serve on the jury even though Tippah County has a twenty-percent minority population. Her attorney argued that Simmons could not “get a fair trial unless there [was] some representation on the panel by a member of her own race.” Simmons now argues
 
 *848
 
 that she was denied the right to an impartial jury selected from a random cross-section of her community, as twenty-two minorities were summoned for jury duty, but only six or seven reported for service.
 
 [3]
 

 ¶ 14. The prosecutor responded that he did not know the number of African Americans who had been summoned for jury duty. However, he noted that of the six African Americans who had reported, only one was stricken for cause.
 
 [4]
 
 The prosecutor argued that the trial judge was not authorized to strike the jury panel, because a pattern of exclusion based on race was not proven. The trial judge agreed.
 

 ¶ 15. Simmons directs our attention to
 
 Duren v. Missouri,
 
 439 U.S. 357, 364, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), wherein the United States Supreme Court announced certain criteria that a defendant must meet in order to establish a prima facie violation of the fair cross-section requirement:
 

 (1) that the group alleged to be excluded is a “distinctive” group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this un-derrepresentation is due to systematic exclusion of the group in the jury-selection process.
 

 In
 
 Duren,
 
 the United States Supreme Court ruled unconstitutional a Missouri statute which allowed for the exemption of all women from jury duty, if they so desired, because the exemption unnecessarily diluted women from the jury pool in violation of the cross-section requirement of the Sixth Amendment.
 
 Id.
 
 at 370, 99 S.Ct. 664.
 

 ¶ 16. Clearly, African Americans are considered a “distinctive group in the community.” However, Simmons failed to satisfy the remaining elements of the test: that “representation of [African Americans] in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and ... that this underrepresen-tation is due to systematic exclusion of the group in the jury-selection process.” A single venire wherein a distinctive group is under represented does not constitute systematic exclusion of that group from the jury-selection process. This issue lacks merit.
 

 S. Motion to Dismiss
 

 ¶ 17. A motion to dismiss challenges the sufficiency of the evidence.
 
 Wright v. State,
 
 958 So.2d 158, 168(¶ 27) (Miss.2007) (citing
 
 Hawthorne v. State,
 
 835 So.2d 14, 21(¶ 31) (Miss.2003)). “When reviewing the sufficiency of the evidence, [an appellate court] must ask whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Id.
 
 (citing
 
 Bush v. State,
 
 895 So.2d 836, 843(¶ 16) (Miss.2005)).
 

 
 *849
 
 ¶ 18. Simmons filed a motion to dismiss, asserting the affirmative defense of entrapment. She argued that the State induced her to commit the crime and that she lacked predisposition. She contends that the State orchestrated the crime and failed to show any predisposition on her part. “Entrapment has been defined as ‘the act of inducing or leading a person to commit a crime not originally contemplated by [the person], for the purpose of trapping [the person] for the offense.’ ”
 
 Morgan v. State,
 
 703 So.2d 832, 835 (Miss.1997) (quoting
 
 Walls v. State,
 
 672 So.2d 1227, 1230 (Miss.1996)). Further, it has been established in our jurisprudence that:
 

 If the defendant already possesses the criminal intent, and the request ... merely gave the defendant the opportunity to commit what he or she was already predisposed to do, entrapment is not a defense. Before a defendant can raise the defense of entrapment, he or she is required to show evidence of government inducement to commit the criminal act and a lack of predisposition to engage in the criminal act prior to contact with government agents,
 

 /¿(citation omitted).
 

 ¶ 19. Simmons failed to prove that the State induced or led her to sell crack cocaine to Rowland. According to Rowland’s testimony, Simmons had been selling drugs earlier in the day before he presented himself at her residence. Thus, it is clear that Simmons was already predisposed to selling drugs; therefore, the defense of entrapment was not available to her. We find no merit to this issue.
 

 ¶ 20. THE JUDGMENT OF THE TIPPAH COUNTY CIRCUIT COURT OF CONVICTION OF THE SALE OF COCAINE AND SENTENCE OF TWENTY-FIVE YEARS, WITH FIVE YEARS SUSPENDED, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FIVE YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Actually, Simmons asserts in this issue that the trial court erred in allowing the trial to go forward even though no African Americans were in the “jury pool.” Based on the argument set forth in her brief, we conclude that Simmons is arguing that the trial judge erred in allowing the trial to proceed even though there were no African Americans on the petit jury, as Simmons concedes that there were African Americans in the venire.
 

 [2]
 

 . Prior to becoming a confidential informant, Rowland, who was addicted to crack cocaine, had been arrested and charged with selling
 
 *846
 
 cocaine to a confidential informant. After his arrest, Rowland agreed to work with the sheriff's department. The charge against Rowland was still pending against him at the time of Simmons’s trial.
 

 [3]
 

 . Mississippi Code Annotated section 13-5-2 (Rev.2002) provides:
 

 It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity in accordance with this chapter to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose. A citizen shall not be excluded from jury service in this state on account of race, color, religion, sex, national origin, or economic status.
 

 [4]
 

 . The prosecutor explained that the juror who was stricken for cause had previous felony convictions for contributing to the delinquency of a minor, domestic violence, and trespassing.